This involves the third divorce between the parties.
The husband appeals, and the sole question presented for review is whether, under the evidence in the case, the parties reconciled two days after the divorce complaint was filed by the wife.
If the parties so reconciled, the effect in Alabama is clear, for a reconciliation between the parties in a pending divorce action abrogates the cause of action; and, ordinarily, the only allowable judgment thereafter is one dismissing the cause.McNutt v. Beaty, 370 So.2d 998 (Ala. 1979); James v. James,369 So.2d 811 (Ala.Civ.App. 1979). Thus, in this case, if the parties reconciled, the circuit court erred in rendering the final divorce judgment. *Page 844 
We have located no case in Alabama which defines "reconciliation" or even where the question was contested as to whether the parties had indeed reconciled. In McNutt, supra, it is clear that the parties reconciled since they jointly signed a letter addressed to the trial court stating such fact and requesting that the court dismiss their divorce case. In James,supra, a review of the record discloses no contest of the fact that there had been a reconciliation of the parties pending the litigation. Our previous cases have generally been concerned with the effect of reconciliation rather than as to whether a reconciliation occurred.
In the case at bar the wife's evidence upon this issue was that she left her husband because of his actual cruelty to her, and, shortly thereafter, on December 17, 1979, she filed her divorce complaint. She testified that two days later:
 "I went back to him, because it was right before Christmas, because of Kim, you know, to see if I could make it with him. . . . He said he would be good to me, that he wanted to try to make it with me and that was before Christmas and I thought well, it would be best if I could try for Kim's sake."
Kim was the seven year old daughter of the parties. They lived together in the same house from around December 19, 1979 until January 10, 1980, when they again separated.
The husband's testimony as to this aspect of the case was that the summons and complaint were served upon him on January 10, 1980, but he had read of her filing the case in the papers. He stated that, "[t]he last time she left, before the[y] served the papers, I went to her mother's and she came back and lived with me, but she kept on telling me she wanted me to leave and everything and she wasn't going to drop the divorce." She lived with him, "but during that time, she said she would have me arrested for Assault with a Deadly Weapon, but she said that she would drop those charges to keep me from going to Jail and I told her, I didn't care, I would go to Court and see if I went to Jail."
The foregoing constituted all of the evidence by either party as to the reconciliation question.
In addition to our subsequent comments, we adopt as correct the summary of the law as to what is meant by "reconciliation" as authored by Homer F. Clark, Jr., in The Law of DomesticRelations in the United States, p. 541, wherein it was stated as follows:
 It is not difficult to define reconciliation, although its application may be puzzling at times. For the present purpose it means a voluntary resumption of marital cohabitation in the fullest sense. This ordinarily requires a living together as husband and wife, having sexual relations, and, where possible, a joint domicile. The intention of the parties must be to resume married life entirely, and not merely to enjoy each other's society temporarily, for limited purposes, or as a trial of whether they want to be reconciled. The state of mind required somewhat resembles that usually held necessary for condonation, but the cases do not seem to require that there be proof of forgiveness of past offenses. Isolated acts of intercourse alone would not be enough. [Footnotes omitted.]
For other definitions and authorities, see Black's LawDictionary, 5th Ed., p. 1144 (1979), and comprehensive annotations in 92 A.L.R.2d 1009, 1014 (1963), 35 A.L.R.2d 707, 747-753 (1954), and 40 A.L.R. 1227, 1239 (1926).
"A resumption of cohabitation in its fullest sense" simply means what it says; that they act as husband and wife. They resume their status, positions, services, privileges and duties as marital partners in all material respects.
If there was, initially, an intention by both parties to resume the marital relationship permanently and normally, and the parties cohabited, the duration of their cohabitation is immaterial. Some questions may arise as to whether the parties intended to resume married life entirely where *Page 845 
they shortly again separate, but that is a factual matter to be considered by the trial judge along with all of the other evidence in the case and reasonable inferences therefrom.
Separated married couples who later cohabit on a trial basis do not have a present intent to resume married life entirely and on a permanent basis. They utilize the trial cohabitation as an instrument to assist them in making up their minds. The requisite intent is not present. They do not intend to settle their differences on a permanent basis, but rather conditionally. After a separation, if the parties casually cohabit, or if the cohabitation is sporadic, or if it is conditional or provisional, there is no reconciliation because of the absence of the required intent.
Reconciliation is largely a state of the minds of both of the parties to be determined from all of the evidence and reasonable and proper inferences therefrom.
The trial judge in the instant case could have determined from the evidence that the wife had no intent to permanently resume marital cohabitations in the fullest sense, but that she lived with her husband through the Christmas holidays for the sake of the child only; that the cohabitation was temporary and for a limited or trial purpose. The quoted portions of the husband's testimony are highly indicative that the wife did not intend to resume marital cohabitation on any permanent basis, for she consistently informed her husband that she desired that he leave and that she would not dismiss the proceedings.
In Keller v. Keller, 122 Cal.App. 712, 10 P.2d 541 (1932), the court stated:
 The real question before the court was whether the circumstances as a whole showed a mutual intention to effect a reconciliation and unite in mending the break in the matrimonial yoke. This was a question of fact for the determination of the judge, who had the parties before him and patiently listened to each. The record, as we view it, indicates that he exercised his judgment fairly and discreetly.
While we affirm this case, we offer a caveat to the bar in all cases, contested or uncontested, where reconciliation might be a valid issue. Attorneys should not gamble with the domestic lives of their divorce clients. When in serious or substantial doubt as to whether the parties effected a reconciliation and subsequently decided to proceed to a divorce, valor dictates a voluntary dismissal without prejudice of the old divorce action and a new beginning with a fresh complaint. It is far better to suffer a short delay than to be haunted and embarrassed by a divorce judgment which is, at least, voidable upon appeal.
This case is affirmed.
The foregoing opinion was prepared by Retired Circuit Judge EDWARD N. SCRUGGS, serving on active duty status as a judge of this court under the provisions of § 12-18-10 (e) of the Code of Alabama of 1975. His opinion is hereby adopted as that of the court.
AFFIRMED.
All the Judges concur.