DeLeisseline H. Hale ("the wife") and Douglas V. Hale ("the husband") were married on December 20, 1996. On September 21, 1999, the husband filed a complaint seeking a divorce from the wife based on incompatibility of temperament and irreconcilable differences; the husband attached a copy of the antenuptial agreement executed by the parties the day before they were married.
Regarding alimony in gross and moving expenses, the antenuptial agreement states, in pertinent part:
 "If any of the following events shall occur during the marriage of the parties, namely, (a) the filing by either party of an action that results in a final divorce or a legal separation following a written request by the Husband to the Wife that he desires her to leave the residence at Lot 15, Governor's Bend Subdivision, or any subsequent marital residence, in which they are both then residing (`the marital residence'); (b) the filing by the Husband of an action resulting in a final divorce or legal separation while the Wife is still residing in the marital residence; then if any of the these events occur and no other events, the following lump sum shall be payable by the Husband . . . to the Wife:
". . . .
 "(4) Between the second and third anniversary dates of their marriage, the lump sum of One Hundred Fifty Thousand and No/100th Dollars ($150,000);
 "(5) Between the third and fourth anniversary dates of their marriage, the lump sum of Two Hundred Thousand and No/100th Dollars ($200,000);
 "(6) Between the fourth and fifth anniversary dates of their marriage, the lump sum of Two Hundred Fifty Thousand and No/100th Dollars ($250,000);
 "(7) Between the fifth and sixth anniversary dates of their marriage, the lump sum of Two Hundred Ninety Five Thousand and No/100th Dollars ($295,000);
". . . .
 "It is the filing date in subparts (a) and (b) . . . that determines which paragraph (1) through (12) applies.
 "In the event the Wife leaves the marital residence without the written request of the Husband for her to leave and a final divorce or legal separation filed by either party is rendered or in the event of a final divorce or legal separation filed by the Wife while living in the marital residence, then the sum payable by the Husband to the Wife in (2) through (12) above shall be one-half the stated amount. . . .
 "In the event the Wife should leave the marital residence for any reason resulting in a final divorce or legal separation, then the Husband shall pay the Wife's moving expenses from the marital residence to her residence at 1413 California Street or a location of equal value and redecorated as needed by the Wife. The Husband will then pay the moving expenses from the temporary location to the Wife's residence. If the Wife elects to relocate to another city, the Husband shall pay for the same."
On November 9, 1999, the husband filed a motion for a summary judgment; in support of his motion, the husband submitted the pleadings and his own affidavit. On December 15, 1999, the wife filed a motion consenting to the trial court's granting of the husband's motion for a summary judgment. *Page 316 
Before the entry of the summary judgment, the husband's attorney advised the trial court, by letter dated December 29, 1999, that the parties were attempting to reconcile and requested that the trial court withhold entering a judgment of divorce until January 5, 2000. The husband's attorney advised the trial court, by letter dated January 4, 2000, that the attempted reconciliation had failed and requested that the trial court enter a judgment of divorce. However, before the trial court entered a judgment of divorce, the husband's attorney advised the trial court, by letter dated January 13, 2000, that the parties were once again attempting to reconcile. The husband's attorney again requested that the trial court withhold entry of a judgment of divorce based on his understanding from the husband that both the husband and the wife desired that the court withhold entering the judgment "for the time-being and . . . place the case on the Administrative Docket while they attempt to save the marriage." The letter further stated that "[i]t is understood that either party could request the case be removed from the Administrative Docket and restored to the Active Docket."[1]
Neither party moved to dismiss the pending divorce action or to restore it to the trial court's active docket until March 13, 2002, at which time the husband filed a "Motion for Filing of Final Judgment or in the alternative for Restoration to the Active Docket." In his motion, the husband alleged that the trial court had signed a divorce judgment on January 3, 2000, but that that judgment had never been filed with the clerk of the court; the husband requested that the trial court file that judgment with the clerk of the court. Alternatively, the husband requested that the pending action be restored to the trial court's active docket. The husband also purported to amend his September 21, 1999, complaint, by filing a "Conditional Amended Complaint," seeking a divorce from the wife based on incompatibility of temperament and irreconcilable differences; the husband attached a copy of the antenuptial agreement to his "Conditional Amended Complaint."
On March 15, 2002, the wife filed a motion to dismiss the pending divorce action, alleging as the sole grounds for dismissal that the parties had reconciled and reconciliation of the parties to a pending divorce action abrogates the cause of action, and, therefore, she argued, the trial court had lost subject-matter jurisdiction over the proceedings, citing McNutt v. Beaty, 370 So.2d 998 (Ala. 1979); Rikard v.Rikard, 387 So.2d 842 (Ala.Civ.App. 1980); and James v. James,369 So.2d 811 (Ala.Civ.App. 1979).[2] Regarding the issue of reconciliation, the husband argued that the parties had only attempted to reconcile and therefore, he argued, the pending divorce action should be restored to the trial court's active docket. In a brief submitted to the trial court, the husband conceded that "[i]f the current action is dismissed and the [h]usband is required to file it again, the alimony [in gross] would be $295,000."
On April 11, 2002, the trial court heard oral arguments and considered the *Page 317 
affidavits and exhibits submitted by the parties. On April 18, 2002, the trial court entered a judgment dismissing the action without prejudice; implicit in its judgment was a factual finding that the parties had reconciled. See Grund v. Jefferson County, 277 So.2d 334 (Ala. 1973) (where a trial court does not make specific findings of fact, appellate courts will presume that the trial court made such findings as will support its judgment). The husband did not appeal the April 18, 2002, judgment.
On April 23, 2002, the husband filed a new complaint, seeking a divorce from the wife based on incompatibility of temperament and irreconcilable differences; the husband attached a copy of the antenuptial agreement to his complaint. On May 16, 2002, the husband filed a motion for a summary judgment; in support of his motion, the husband submitted the pleadings and his own affidavit. The husband's affidavit states, in part:
 "3. [The wife] and I were married to each other on December 20, 1996 . . . and lived together as Husband and Wife until, on or about March 1, 2002, when we effectually separated and have not lived together in the relationship of husband and wife thereafter.
". . . .
 "5. [The wife] and I have been highly incompatible with each other for over one (1) year next preceding the date of this Affidavit [May 16, 2002]. . . .
 "6. My wife and I entered into the Ante-Nuptial Agreement which is [attached] . . . to my Complaint. . . . The Agreement provides for the distribution of our respective properties and all the other terms of a divorce . . . ."
The wife filed a motion consenting to the trial court's granting of the husband's motion for a summary judgment. On August 9, 2002, the trial court entered a judgment divorcing the parties and incorporating by reference the antenuptial agreement.[3]
On September 6, 2002, the husband filed a petition for a declaratory judgment, alleging, among other things, that a justiciable controversy existed as to the amounts the wife was entitled to receive as alimony in gross and moving expenses under the terms of the antenuptial agreement that had been incorporated into the final judgment of divorce. The husband further alleged that the wife had "failed and refused to vacate the . . . [marital] residence in which [the husband] has sole ownership interest and the wife has no interest." The husband requested, among other things, that the trial court enter a judgment finding that the wife was entitled to $150,000 as alimony in gross, that the wife was not entitled to moving expenses, and that the wife be ordered to vacate the marital residence.
On October 4, 2002, the wife filed a motion to dismiss the husband's petition for a declaratory judgment and a "Petition for Injunctive Relief, Enforcement of Order and Rule Nisi." In her motion to dismiss, the wife alleged that a justiciable controversy did not exist because, she claimed, among other reasons, that under the express terms of the antenuptial agreement incorporated in the divorce judgment, she was entitled to $295,000 as alimony in gross and the payment of her *Page 318 
moving expenses. In her petition, the wife requested that the trial court enjoin the husband from requiring her to move from the marital residence until the husband paid her certain sums she claimed he owed her under the terms of the antenuptial agreement; the wife attached a copy of a letter from the husband, dated September 23, 2002, demanding that the wife vacate the marital residence within 10 days and that at the expiration of the 10-day time period, he would begin claiming monthly rent in the amount of $3,000 from her.[4] In her petition, the wife claimed, among other things, that the husband had failed to pay her $295,000 in alimony in gross and had failed to pay her moving expenses as required under the express terms of the antenuptial agreement. On October 21, the husband filed a motion to dismiss the wife's petition.
On October 28, 2002, the trial court heard oral arguments and considered the affidavits and exhibits submitted by the parties. Thereafter, the trial court entered an interlocutory order, awarding the wife $150,000 and ordering the husband to pay the wife $12,000 "for the purpose of permitting [the wife] to move from the marital residence in accordance with this order"; the trial court ordered that the wife vacate the marital residence on or before November 30, 2002, at 12:00 noon.[5] The trial court specifically reserved its determination of the amount of alimony in gross the wife was entitled to receive under the terms of the antenuptial agreement and "all issues" concerning whether the wife was entitled to have her moving expenses paid for by the husband.[6]
On March 10, 2003, the trial court entered a final judgment. Regarding the award of alimony in gross, the trial court found:
 "As to the interpretation of the Ante-Nuptial Agreement regarding alimony in gross, the Court finds that the actions and conduct of the [wife] effected an estoppel in the year 2000, and thus the [wife] is entitled to the total sum of $200,000 as alimony in gross. As the Court has already entered an interlocutory order that the husband was due to pay the wife $150,000 in alimony in gross, and the same has been paid, the wife is entitled to the additional sum of $50,000 for alimony in gross."
Regarding the wife's moving expenses, the trial court found:
 "[U]pon a careful reading of the Ante-Nuptial Agreement [the trial court] finds from the evidence that the conditions upon which the [wife] would be entitled to moving expenses have not occurred; therefore, the interlocutory allowance for moving expenses in the amount of $12,000 is not due to the wife and moreover there is no evidence to *Page 319 
support the reasonable cost for such moving expenses, even if they were due under the Ante-Nuptial Agreement."
The trial court found that "the [husband] is entitled to off-set the $12,000 paid on an interlocutory basis for moving expenses against the balance of alimony in gross declared due [to] the [wife]."
Regarding the husband's claim for rent and utilities reimbursement (which appears to have been implicitly tried by the consent of the parties) and the wife's claim for interest upon any unpaid portion of alimony in gross since the entry of the divorce judgment, the trial court found:
 "The [husband] is entitled to reasonable rent and utilities from the [wife] during the period after the [wife] was requested to vacate the [husband's] residence and that the reasonable rental value of the premises for said period greatly exceeds any interest which may be due to the [wife]."
Although the trial court did not include any calculations in its judgment, it found that the wife's claim for interest was "off-set against the claims of the husband for rent and utilities and [awarded] no sums . . . to either party on their said claims."
The wife appeals. This court consolidated the wife's appeals from the declaratory-judgment action and the action on her petition for enforcement of the divorce judgment and rule nisi.
At the outset, we note that this court's review of the application of law to undisputed facts is de novo. Fitts v. Stokes, 841 So.2d 229 (Ala. 2002).
 "[W]here a trial court does not receive evidence ore tenus, but instead makes its judgment based on the pleadings, exhibits, and briefs, the ore tenus
standard's presumption of correctness does not apply to the trial court's factual findings and it is the duty of the appellate court to judge the evidence de novo."
Ex parte Horn, 718 So.2d 694, 705 (Ala. 1998). This court reviews questions of law de novo. Thompson Tractor Co. v. Fair Contracting Co.,757 So.2d 396, 398 (Ala. 2000).
The wife contends that the trial court erred in failing to award her $295,000 in alimony in gross. Specifically, the wife argues that the express terms of the antenuptial agreement state that she was entitled to that amount because, she claims, the filing of the action that resulted in the final judgment of divorce occurred between the parties' fifth and sixth wedding anniversary. The wife further contends that the trial court erred in determining that "the actions and conduct of the [wife] effected an estoppel in the year 2000, and thus the [wife] is entitled to . . . $200,000 as alimony in gross."
This case involves an antenuptial agreement, executed by the parties, that was incorporated into the divorce judgment. Once incorporated into a final judgment of divorce, an ante-nuptial agreement loses its character as a independent agreement and becomes part of the judgment. Ex parteCarstens, 728 So.2d 128, 134 (Ala. 1998); Ex parte Owens, 668 So.2d 545,545-47 (Ala. 1995).[7] *Page 320 
 "[An antenuptial agreement] incorporated into a divorce judgment is construed in the same manner as any other contract. Sartin v. Sartin, 678 So.2d 1181
(Ala.Civ.App. 1996). Whether a provision of a divorce judgment is ambiguous is a question of law to be resolved by the trial court. Wimpee v. Wimpee, 641 So.2d 287 (Ala.Civ.App. 1994). The words of a judgment are to be given their plain and ordinary meanings, and the intentions of the parties are derived from them . . . . Vainrib v. Downey, 565 So.2d 647
(Ala.Civ.App. 1990)."
Hallman v. Hallman, 802 So.2d 1095, 1098 (Ala.Civ.App. 2001). Further, if the terms of the judgment are not ambiguous, they should be given their usual and ordinary meaning. McClure v. Cassady, 426 So.2d 430
(Ala.Civ.App. 1982). The language contained in the antenuptial agreement (incorporated into the divorce judgment) stating that "the filing by the [h]usband of an action resulting in a final divorce" is plain and unambiguous. An unambiguous judgment must be enforced according to its terms. Jones v. Jones, 722 So.2d 768 (Ala.Civ.App. 1998).
In the present case, it is undisputed that the filing of the action that resulted in the final judgment of divorce occurred on April 23, 2002, when the husband filed his second divorce action. That action was filed between the parties' fifth and sixth wedding anniversary and, therefore, under the plain, unambiguous language of the antenuptial agreement, the wife is entitled to $295,000 in alimony in gross. Accordingly, unless the wife's actions and conduct effected an estoppel in the year 2000, the judgment of the trial court is due to be reversed on this issue. Therefore, we now turn to the issue of estoppel to determine whether the doctrines of judicial estoppel or equitable estoppel are applicable to the facts in the present case.
In Ex parte First Alabama Bank, [Ms. 1020855, September 12, 2003] ___ So.2d ___, ___ (Ala. 2003), our Supreme Court "embrac[ed] the factors set forth in New Hampshire v. Maine[, 532 U.S. 742 (2001),] and join[ed] the mainstream of jurisprudence in dealing with the doctrine of judicial estoppel." In Ex parte First Alabama Bank, our Supreme Court stated:
 "The United States Supreme Court in New Hampshire v. Maine, 532 U.S. 742 (2001), recently observed that '"[t]he circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle"' and then identified several factors as informative in determining the applicability of the doctrine of judicial estoppel. 532 U.S. at 750-51 (quoting Allen v. Zurich Ins. Co., 667 F.2d 1162, 1166 (4th Cir. 1982)). The Court held that for judicial estoppel to apply (1) `a party's later position must be "clearly inconsistent" with its earlier position'; (2) the party must have been successful in the prior proceeding so that `judicial acceptance of an inconsistent position in a later proceeding would create "the perception that either the first or second court was misled"' (quoting Edwards v. Atena Life Ins. Co., 690 F.2d 595, 599 (6th Cir. 1982)); and (3) the party seeking to assert an inconsistent position must `derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.' *Page 321 532 U.S. at 750-51. No requirement of a showing of privity or reliance appears in the foregoing statement of factors to consider in determining the applicability of the doctrine of judicial estoppel."
___ So.2d at ___.
In the present case, the husband argues that the wife should be judicially estopped from claiming that the September 21, 1999, filing date of the first divorce action should not be given effect under the antenuptial agreement because, he says, the wife essentially waived that right when she failed to seek a dismissal of the previous divorce action for over two years. However, the wife has not maintained a "clearly inconsistent" position as contemplated in Ex parte First Alabama Bank, supra. In the previous action, the wife contended as her sole grounds for dismissal that the parties' reconciliation abrogated the cause of action, and the trial court entered a judgment dismissing the action. The wife has maintained that same position in the present case. Accordingly, we conclude that judicial estoppel does not apply to the facts of this case.
As to equitable estoppel, our Supreme Court has stated:
 "'To establish the essential elements of equitable estoppel, [a party] must show the following:
 "'(1) That "[t]he person against whom estoppel is asserted, who usually must have knowledge of the facts, communicates something in a misleading way, either by words, conduct, or silence, with the intention that the communication will be acted on;"
 "'(2) That "the person seeking to assert estoppel, who lacks knowledge of the facts, relies upon [the] communication;" and
 "'(3) That "the person relying would be harmed materially if the actor is later permitted to assert a claim inconsistent with his earlier conduct."'
 "Lambert v. Mail Handlers Benefit Plan, 682 So.2d 61, 64 (Ala. 1996), quoting General Electric Credit Corp. v. Strickland Div. of Rebel Lumber Co., 437 So.2d 1240, 1243 (Ala. 1983)."
Allen v. Bennett, 823 So.2d 679, 685 (Ala. 2001).
The husband argues that because the wife failed to seek a dismissal of the first divorce action for over two years, he believed the amount of alimony in gross awarded to the wife if the parties later divorced would be limited to $150,000 based on the September 19, 1999, filing date of the first divorce action. Alternatively, the husband argues that if the wife had moved to dismiss the first divorce action in 2000, and the trial court had granted that motion, he would have filed a new complaint for divorce in 2000, and the amount of alimony would have been set at $200,000. However, the husband's argument is based on the premise that the parties had not actually reconciled during that time period.
As previously noted, the parties litigated the issue of whether the parties reconciled in the first divorce action. Implicit in the trial court's judgment dismissing that first action was a finding that the parties had indeed reconciled. Even the husband conceded in his brief submitted to the trial court in the first divorce action that "[i]f the current action is dismissed and the [h]usband is required to file it again, the alimony [in gross] would be $295,000." Additionally, the husband stated in his affidavit in support of his motion for a summary judgment in the second divorce action that "[the wife] and I were married to each other on December 20, 1996, . . . and *Page 322 
lived together as Husband and Wife until, on or about March 1, 2002, when we effectually separated and have not lived together in the relationship of husband and wife thereafter." Any claim that the husband would have filed a new divorce action in the year 2000 is inconsistent with the parties' reconciliation during that year and with his own admission that the parties were married on December 20, 1996, and lived together as man and wife until March 2002, when they separated.
We conclude that the husband did not rely on the actions of his wife in assuming that his alimony obligation would be fixed as of the filing date of the first divorce action or at some point during the year 2000. Rather, it appears that perhaps the husband did not fully appreciate the legal effect of the parties' reconciliation after the filing of the first divorce action. Accordingly, we conclude that the doctrine of equitable estoppel does not apply to the facts of this case. Therefore, we conclude that the trial court erred in determining that the wife's actions and conduct in the year 2000 effected an estoppel in the year 2000.
The wife also contends that the trial court erred in failing to award interest on the portion of unpaid alimony in gross since the entry of the divorce judgment on August 9, 2002, citing § 8-8-10, Ala. Code 1975. That section provides, in pertinent part, that "judgments shall bear interest at the rate of 12 percent per annum." Although the trial court found that the wife "may" be entitled to such interest, it offset her claim for interest against the husband's claim for rent and utilities and did not make an award to the wife with regard to her claim for interest on the judgment. We conclude that pursuant to § 8-8-10, the wife is entitled to interest on the portion of alimony in gross that has remained unpaid since the entry of the divorce judgment on August 9, 2002. The amount of alimony in gross due as of August 9, 2002, was $295,000. The amount due was reduced to $145,000, when the husband paid $150,000 in accordance with the trial court's interlocutory order. (The wife states in her brief that the husband paid the $150,000 in November 2002.) Because we reverse that portion of the judgment relating to the alimony in gross and conclude that the wife is entitled to $145,000 more than the trial court awarded her, we also reverse and remand that portion of the judgment relating to the wife's award of interest on the unpaid amount of alimony in gross for the trial court to recalculate the interest in accordance with § 8-8-10. On remand, we direct the trial court to include in its judgment both the calculations for the amount of reasonable rent and utilities due to the husband for the period of time the wife remained in the marital residence after he requested that she vacate the marital residence[8] and the amount of interest due to the wife on the unpaid portion of the alimony in gross.
Finally, the wife contends that the trial court erred in failing to award her *Page 323 
moving expenses. The wife does not argue that the provision of the antenuptial agreement relating to moving expenses was ambiguous; rather, she argues that she was entitled to the payment of her moving expenses under the express language of the antenuptial agreement. In its judgment, the trial court found that the "the conditions [under the antenuptial agreement] upon which the [w]ife would be entitled to moving expenses have not occurred." The antenuptial agreement states that the wife is entitled to moving expenses "[i]n the event the [w]ife should leave the marital residence for any reason resulting in a final divorce"; that language clearly contemplates that the wife would be entitled to moving expenses only if she met the "condition" of moving out of the marital residence before the parties were divorced. Accordingly, we conclude that the wife is not entitled to the payment of her moving expenses, and we affirm that portion of the trial court's judgment.[9]
Having concluded that the wife is not entitled to moving expenses, it is not necessary for us to reach the issue whether the wife presented sufficient evidence to support the reasonableness of $12,000 for moving expenses.
The wife's claim for an attorney fee on appeal is granted in the amount of $4,500.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
YATES, P.J., and CRAWLEY and PITTMAN, JJ., concur.
MURDOCK, J., concurs in the result.
[1] Although all three letters were sent to the trial judge, they were not filed with the clerk of the court.
[2] The reconciliation of the parties to a pending divorce action abrogates the cause of action, and the suit as a legal proceeding no longer exists. McNutt, 370 So.2d at 1000 (citing Bell v. Bell,214 Ala. 573, 108 So.2d 375 (1926)). The trial court loses subject-matter jurisdiction over the parties, and, as a general rule, the only allowable judgment is an order of dismissal. Rickard, 387 So.2d at 843 (citingMcNutt, supra, and James, supra).
[3] The husband argues for the first time on appeal that the divorce judgment was not a final judgment, because, he argues, it ordered the parties to "abide by the terms of the [antenuptial agreement] until such further order of the court." However, we conclude that the divorce judgment was a final judgment because it clearly disposed of all the issues between the parties and was a complete adjudication of all matters in controversy. Dees v. State, 563 So.2d 1059 (Ala.Civ.App. 1990).
[4] The husband admitted that the reasonable value for the wife's continued occupancy of the martial residence included the "utilities, maintenance, and all other upkeep."
[5] The trial court certified, pursuant to Rule 54(b), Ala.R.Civ.P., that portion of its order requiring the wife to vacate the martial residence.
[6] Regarding the moving expenses, the order states:
 "The Court expressly orders that said sum is a temporary allowance made to the [wife], and all issues concerning whether the [wife] is or is not entitled to have her moving expenses paid [for] by the [husband] are specifically reserved until a final order of the Court. . . . The Court further orders that in the event that it should determine that the [wife] is not entitled to any moving expenses, it specifically reserves its authority to direct that said sum of $12,000 be repaid to the [husband] by the [wife] or to credit said amount against any other sums due to the [wife]."
[7] At the trial-court level, both parties stated in their pleadings that the antenuptial agreement had been incorporated into the divorce judgment. The husband points out in his brief on appeal that a trial court may accept or reject certain parts of an antenuptial agreement in entering a divorce judgment, citing Shaverv. Shaver, 611 So.2d 1094, 1096 (Ala.Civ.App. 1992). We note that the trial court in this case incorporated the entire antenuptial agreement into its divorce judgment as requested by the parties.
We also note that the wife argues somewhat inconsistently for the first time in her reply brief that the antenuptial agreement was not merged into the divorce judgment, citing certain language contained in the antenuptial agreement. Because the wife did not raise this issue in her initial brief or at trial, we "will simply treat such issue as not before the Court." Kennesaw Life Accident Ins. Co. v. Old Nat'lIns. Co., 291 Ala. 752, 754, 287 So.2d 869, 871
(1973).
[8] Although the wife argues on appeal that the husband did not plead or prove the amount of rent and utilities, she does not appeal the trial court's determination that the husband was entitled to reasonable rent and utilities during the period after she was requested to leave the marital residence. The only evidence before the trial court of the amount of reasonable rent and utilities is the husband's letter, dated September 23, 2002, demanding that "the reasonable rental value of the house is $6,000 per month, and rent will be claimed against [the wife] at the rate of $3,000 per month after the expiration of 10 days."
The record does not reflect whether the wife moved out of the marital residence by November 30, 2002, as ordered by the trial court. The husband's brief seems to imply that the wife was still residing at the marital residence when the trial court entered its final judgment on March 10, 2003.
[9] Had the wife argued at the trial-court level and on appeal that the language of the antenuptial agreement relating to moving expenses was ambiguous, a different result might have been reached by the trial court and this court on the issue of her entitlement to moving expenses under the antenuptial agreement.