[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 567 
Vickie Neny ("the mother") and Albert H. Neny ("the father") were divorced on March 18, 2003. Pursuant to an agreement of the parties, the trial court awarded sole physical custody of the parties' two children to the mother, granted the father visitation rights, and ordered the father to pay $815 per month in child support and to pay half of all noncovered medical expenses incurred on behalf of the children. In December 2003, less than a year after the divorce, the father filed a petition to modify, requesting the trial court, among other things, to redetermine the amount of child support he was required to pay to the mother because, he asserted, the mother was earning more than her CS-41 "Child Support Obligation Income Statement/Affidavit" form indicated. The mother filed a counterpetition to modify and a contempt petition, alleging that the father was in arrears in child support and in payments for the children's noncovered medical expenses. She also alleged that the father had failed to return personal property belonging to the children. The father answered, denying the mother's allegations and asking the trial court to find the mother in contempt for interfering with his visitation of the children.
The trial of the father's petition to modify, the mother's counterpetition to modify, the mother's contempt petition, and the father's counterpetition alleging contempt began on January 6, 2005, was recessed, and then recommenced on March 10, 2005. On May 16, 2005, the trial court entered an order appointing a guardian ad litem for the parties' children, directing the parties to enter mediation, and continuing the trial until the conclusion of mediation. On July 12, 2005, the mother moved the trial court to set the matter for trial because, she said, the father had refused to participate in mediation. On July 20, 2005, the court set the case for trial on September 6, 2005. Upon the father's motion, the hearing was continued to September 30, 2005. After the September 30 hearing began, the father amended his petition to include a false-imprisonment claim against the mother. The father demanded a jury trial on the false-imprisonment claim and moved the court to sever that tort claim. *Page 568 
The mother objected and moved to strike the father's amendment. The September 30 hearing abruptly ended, and the trial court did not rule on the mother's motion. The trial reconvened on March 21, 2006, over one year after the last date on which testimony had been taken — March 10, 2005 — and concluded on March 23, 2006.
On June 14, 2006, the trial court entered the following judgment:
 "These parties have, without a doubt, been some of the most contentious litigants that this Court has ever seen.
 "The Court has taken testimony repeatedly in this case and cases since its inception.
 "The Court finds that these parties are both with unclean hands and that their respective relief is due to be denied except as is hereinafter set out:
 "1. The [mother] has admitted that she has retained in her possession, the coin collection belonging to the father of the [father], and she is directed to forth-with return same to the [father].
 "2. It is clear from the testimony, that the [mother] has under-reported her income from the beginning of this matter and continues to do so. It is also clear to this Court that the [father] has voluntarily become underemployed at various times. Further, it is clear to this Court, that these parties have no intention of attempting to cooperate with each other regarding what is in the best interest of their minor children.
 "In fact, this Court was prepared and ready to cite both parties for contempt and incarcerate them until the intervention of the Guardian Ad Litem.
 "It is noted here that the Guardian Ad Litem's services are greatly appreciated by the Court in this very contentious and litigious situation.
 "The relief demanded by all parties is hereby denied, except as is hereinabove set out."
In its June 14, 2006, judgment, the trial court also severed the father's false-imprisonment claim against the mother and transferred it to the "jury trial division of the circuit court for disposition."
 I.
Citing Foy v. Foy, 447 So.2d 158, 162 (Ala. 1984), for the proposition that a trial court should not deny relief on the basis of the clean-hands doctrine when to do so would "be productive of an offense against public morals or good conscience, or a reflection upon the integrity of the court," the mother asserts that it is against good conscience to punish the parties' children by refusing to enter a judgment in favor of the mother for the father's child-support arrearage, the father's failure to pay his portion of the children's noncovered medical expenses, and the father's failure to return to the mother the children's personal property. With respect to the child-support and medical-expense payments, we agree.
"`"The purpose of the clean hands doctrine is to prevent a party from asserting his, her, or its rights under the law when that party's own wrongful conduct renders the assertion of such legal rights `contrary to equity and good conscience.'"'"Mantiply v. Mantiply, 951 So.2d 638, 657 (Ala. 2006) (quoting Neal v. Neal, 856 So.2d 766, 786 (Ala. 2002), quoting in turn J M Bail Bonding Co. v. Hayes,748 So.2d 198, 199 (Ala. 1999)). With respect to the child-support and medical-expense payments, the mother was primarily asserting not her own right, but the right of the parties' children to the support due from their father as ordered in the judgment of divorce. Moreover, to the extent that the mother was exerting *Page 569 
her own rights, it is not against equity and good conscience to ensure that a parent's child-support obligation is enforced.
The father admitted that he had not fully paid his child support, and, when presented with a ledger containing the mother's calculation of the arrearage in his payments, he stated only that he "did not know" how far behind he was. He presented no evidence to refute the mother's calculations. The trial court stated on the record during the father's testimony, "I find that [the father] had the ability to pay his child support and failed to do so." Similarly, the father admitted that there were noncovered medical expenses for the children that he had not paid. He claimed that he had failed to pay only those expenses for which he had not been presented with a provider's invoice. The mother testified that, for each noncovered medical expense, she had presented the father with providers' invoices, her own canceled checks representing her full payment, and two letters to the father requesting reimbursement of his portion.
"[P]ast due installments of child support . . . create a final monied judgment." Ex parte Morgan, 440 So.2d 1069,1072 (Ala. 1983). "[Consequently, a trial court may not modify, release, or discharge the obligor of past-due support once the support obligation becomes final under the divorce judgment."State ex rel. Vickers v. Vickers, 684 So.2d 1327, 1329
(Ala.Civ.App. 1996).
 "`Child support payments that mature before the filing of a petition are immune from change.' O'Neal v. O'Neal, 532 So.2d 649, 650 (Ala.Civ.App. 1988) (citations omitted). While it is within the discretion of the trial court to modify the amount of child support due in the future, the trial court may not release or discharge child-support payments once they have matured and become due under the original divorce judgment. Frasemer v. Frasemer 578 So.2d 1346, 1348 (Ala.Civ.App. 1991) (citing Mann v. Mann, 550 So.2d 1028 (Ala.Civ.App. 1989))."
Patrick v. Williams 952 So.2d 1131, 1142
(Ala.Civ.App. 2006). Likewise, the trial court "lacked the authority to `forgive' or set aside [the father's] obligation to pay for the children's] [medical] care because that obligation had already accrued." Ex parte State ex rel.Horton, 678 So.2d 106, 108 (Ala. 1996). We hold that the trial court erred by deciding that the clean-hands doctrine could nullify the father's past-due support payments that had become final judgments.
On the other hand, we cannot conclude that the trial court erred by failing to order the father to return to the mother certain items that, the mother says, were the children's personal property. The divorce judgment awarded the children's property "to the children" and did not specify where that property was to be kept — whether at the residence of the mother, who had physical custody of the children, or at the residence of the father, who had visitation with the children. The mother alleged that the father had wrongly failed to turn over to her the children's prepaid college tuition ("PACT") plan as required by the divorce judgment. The divorce judgment provides, in pertinent part:
 "The [mother, father] and the parties' minor children shall be and are hereby awarded their respective personal property as listed on the attached property list."
The property list includes, under the heading for the personal property belonging to one of the parties' children, "[one] PACT Plan for College." We conclude that the divorce judgment does not affirmatively require that the father "turn over" to the *Page 570 
mother the PACT plan, and we will not reverse that portion of the trial court's judgment denying the relief requested by the mother. That said, however, we note that if the father retains the PACT plan, he holds it in trust for the child.See Johnson v. Taylor, 770 So.2d 1103
(Ala.Civ.App. 1999).
 II.
The divorce judgment required the father to pay the mother $6,500 as alimony in gross within 45 days of the entry of the judgment. When the father filed his petition to modify on December 1, 2003, he interpleaded $6,500 and asked the trial court either to disburse that sum to the mother when she returned various items of personal property belonging to him that, he claimed, she had failed to return or, failing that, to offset the $6,500 against the value of the personal property not returned by the mother. The trial court entered an order disbursing the interpleaded funds on July 28, 2006.
Citing Hale v. Hale, 878 So.2d 313
(Ala.Civ.App. 2003), the mother argues that the trial court erred by failing to award her the interest that had accrued on the $6,500 between a date 45 days after the entry of the divorce judgment and the date of the trial court's order disbursing the $6,500. We conclude that the mother's argument is well-taken. In Hale, this court held that a wife was entitled to "interest [at the rate of 12 percent per annum pursuant to § 8-8-10, Ala. Code 1975,] on the portion of alimony in gross that has remained unpaid since the entry of the divorce judgment." 878 So.2d at 322.
 III.
The mother claims that the trial court's finding that "[i]t is clear from the testimony that the [mother] has under-reported her income from the beginning of this matter and continues to do so" is unsupported by the evidence, because, she says, it was based solely upon inadmissible hearsay. The mother's CS-41 form reflected a gross monthly income of $3,041.66. Over the mother's hearsay objection, the trial court admitted in evidence an unsigned, unauthenticated mortgage application form allegedly filed by the mother with Diversified Capitol Corporation of Tennessee. The application form reflected that the mother's monthly income was $4,000.
Even if the admission of the mortgage application form was error, it was harmless because the trial court was presented with other admissible evidence indicating that the mother's actual income might even have been higher than $4,000 per month. The mother's federal incometax returns reflected an income of $39,389 in 2002 and $60,000 in 2003.
The mother is the sole shareholder, officer, and director of Encore Interiors, Inc., an interior-decorating business that is taxed as a Subchapter S corporation. The income that the mother receives from the operation of her business is properly considered self-employment income. See Rule 32(B)(3)(a), Ala. R. Jud. Admin. For self-employment income, "`gross income' means gross receipts minus ordinary and necessary expenses required to produce such income." Rule 32(B)(3)(a), Ala. R. Jud. Admin. "This court has held that in cases involving a parent who owns an interest in a closely held corporation, the parent's income for purposes of determining child support is `the business's net income, some of which is reinvested in the business, rather than the `owner's draw.'"Brown v. Brown, 960 So.2d 712, 716 (Ala.Civ.App. 2006) (quoting Puckett v. Summerford, 706 So.2d 1257, 1258
(Ala.Civ.App. 1997)). See also Hurley v. Hurley,980 So.2d 985, 988 (Ala.Civ.App. 2007); Hall v. Hubbard,697 So.2d 486, 488 *Page 571 
(Ala.Civ.App. 1997); and Klapal v. Brannon,610 So.2d 1167, 1170 (Ala.Civ.App. 1992).
The balance sheets for Encore Interiors, Inc., that were admitted at trial reflected that the corporation had retained earnings of $214,186.47 in 2002 and $213,015.31 in 2003. The trial court could have determined that, notwithstanding the mother's testimony that she paid herself a salary in the $30,000 to $40,000 range, her income, for purposes of Rule 32(B)(3)(a), was considerably higher.
 IV.
Citing Rule 15(a), Ala. R. Civ. P., the mother contends that the trial court erred by allowing the father to amend his petition to add a tort claim arising out of an incident that occurred after the parties' divorce. She claims that the trial court's allowing the amendment "defeats the purpose of Rule 15(a) and allows trial by ambush or surprise."
As previously stated, after the September 30, 2005, hearing began, the father amended his petition to include a false-imprisonment claim against the mother. The father demanded a jury trial on that claim and moved the court to sever that tort claim. The mother objected and moved to strike the father's amendment, alleging that it was untimely because it was filed after the trial of the case had begun and testimony had been taken. The trial court did not rule on the mother's motion. The trial reconvened on March 21, 2006, over one year after the last date on which testimony had been taken" March 10, 2005 — and concluded on March 23, 2006. In its June 14, 2006, judgment, the trial court severed the tort claim and transferred it to the "jury trial division of the circuit court for disposition."
The Committee Comments on 1973 Adoption of Rule 15 state that "the test as to whether amendment is proper [is] functional, rather than, as under [prior] Alabama law, conceptual." Citing 6 Wright Miller, Federal Practice Procedure,Civil § 1484 (1971), the Comments state that "[n]ormally an amendment should be denied only if the amendment would cause actual prejudice to the adverse party." We conclude that the mother was not prejudiced by the filing of an amendment on September 30, 2005, that — because it alleged a tort claim and included a jury demand — could not have been adjudicated by the domestic-relations court. By the time the trial court denied the mother's motion to strike the amendment, severed the tort claim, and transferred the claim to the "jury trial division of the circuit court for disposition," the mother had had notice of the claim for eight and one-half months.
 V
The mother asserts that the trial court exceeded its discretion in failing to award her an attorney fee.
Initially, we note that § 30-2-54, Ala. Code 1975, which gives the trial court the discretion to award an attorney fee in an action alleging contempt for failure to pay "alimony, maintenance or support," is limited in its application to cases in which the trial court finds a party in contempt. SeeRewerts v. McGugin, 613 So.2d 399 (Ala.Civ.App. 1992). Despite the trial court's statement that it was "prepared and ready to cite both parties for contempt and incarcerate them," the trial court did not cite either party for contempt. Given the trial court's unclean-hands finding, it most likely concluded that the contempt citations and any possible resulting attorney-fee awards would offset each other.
The trial court has the discretion to award an attorney fee in a modification proceeding. See Baggett v. Baggett,870 So.2d 735 (Ala.Civ.App. 2003). In exercising *Page 572 
its discretion, the court should consider "`the results of the litigation, the nature of the conduct of the parties, the financial circumstances of the parties, and the earning capacities of the parties,' Campbell v. Tolbert,656 So.2d 828, 830 (Ala.Civ.App. 1994)." Baggett,870 So.2d at 741. See generally Annotation, Right toAttorneys' Fees in Proceeding, after Absolute Divorce, forModification of Child Custody or Support Order, 57 A.L.R.4th 710 (1987). Given what the trial court apparently concluded was contemptuous conduct by both parties, we cannot find that the court exceeded its discretion by failing to award the mother an attorney fee.
The judgment of the Jefferson Circuit Court is affirmed except insofar as it failed to enter a judgment for the mother on the father's child-support arrearage, the father's unpaid portion of the noncovered medical expenses incurred on behalf of the children, and the accrued interest on the father's $6,500 alimony-in-gross payment. The cause is remanded with instructions to enter a judgment in favor of the mother in the amount of $9,070 on the father's child-support arrearage and in the amount of $3,898.95 on the father's unpaid medical-expense obligation. The court is also instructed to calculate the accrued interest on the father's $6,500 alimony-in-gross payment and to enter a judgment for the mother in that amount.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
THOMPSON, P.J., and PITTMAN, BRYAN, and MOORE, JJ., concur.