THOMPSON, Presiding Judge.
L.B. (“the mother”) filed a complaint in the Mobile Circuit Court seeking a divorce from M.B. (“the father”). In that divorce complaint, the mother sought custody of the parties’ three minor children, an award of child support, and a property division and alimony award. The father answered and counterclaimed, seeking joint legal custody of the parties’ two, younger children, J.B. and C.B., and primary physical custody of W.B., the parties’ oldest child. The father moved to stay the divorce action because he was the subject of a pending criminal investigation, and the Mobile Circuit Court granted that motion.
In 2011, the divorce action was transferred to the Etowah Circuit Court (“the trial court”). At that time, both the mother and the father lived in Etowah County; the two younger children were living with the mother, and the oldest child was living with the father. In June 2011, the trial court entered an order that, in pertinent part, suspended the father’s visitation with the two younger children. Later, protection-from-abuse orders were entered preventing the father from attending the two younger children’s sporting events or otherwise contacting those children.
The trial court conducted an ore tenus hearing over the course of two days, and, given the nature of some of the evidence, it ordered that the record be sealed. On July 9, 2013, the trial court entered a judgment that, among other things, divorced the parties, awarded the mother sole custody of the two younger children, and denied the father any visitation with those two children.[1] In addition, the divorce judgment,, among other things, ordered the father to pay postminority educational support for the parties’ two younger children. The father filed a postjudgment motion, and the trial court entered a postjudgment order that modi- *1045 fled the divorce judgment in a manner that is not relevant to the issues on appeal. The father then timely appealed.
As an initial matter, we note that the parties acknowledge on appeal that that part of the divorce judgment ordering the father to pay postminority educational support for the parties’ two younger children should be set aside under our supreme court’s recent decision in Ex parte Christopher, 145 So.3d 60, 63 (Ala.2013). In Christopher, our supreme court held that Alabama’s child-custody statutes do not authorize an award of postminority educational support. The court further held that its holding applied in pending cases in which no final postminority-sup-port order had been entered. Ex parte Christopher, 145 So.3d at 72. In her brief submitted to this court, the mother agrees that the postminority-educational-support award must be reversed because no final order had been entered in this case at the time Ex parte Christopher was decided. Accordingly, we reverse that portion of the trial court’s divorce judgment that requires the father to pay postminority educational support for the parties’ two younger children.
The only other issue the father raises on appeal concerns the trial court’s denial of his request for visitation with the parties’ two younger children. As part of his argument on this issue, the father appears to assert that the trial court erred in failing to explain in its judgment the reason for the denial of visitation. The father cites no caselaw, and this court has found none, requiring that a trial court, make findings of fact if it denies visitation to a noncustodial parent. Rather, in the absence of factual findings, this court must presume that the trial court made those findings necessary to support its judgment. Ex parte Bryowsky, 676 So.2d 1322, 1324 (Ala.1996).
Accordingly, we turn to the issue whether the evidence supports the trial court’s denial of visitation to the father. No useful purpose would be served by setting forth in this opinion all the explicit details pertaining to the issue of visitation. With that caveat, the record indicates the following pertinent facts.
The mother testified that, in December 2008, she discovered pornography depicting what she thought might be children on a computer in the parties’ marital residence. Questioning of the parties indicated that there was some dispute regarding which member of the family placed the pornography on the computer. The mother filed for a divorce in January 2009. The mother also turned over the computer containing the pornography to the Federal Bureau of Investigation. The mother testified that no charges were brought against the father as a result of her turning over the computer to law-enforcement officers.
Also in December 2008, the mother learned that W.B., the parties’ oldest child, had engaged in a homosexual relationship with a foreign-exchange student residing in the parties’ home. In January 2009, at approximately the same time the mother filed for a divorce from the father, W.B. moved to live with his maternal grandparents in Etowah County.
The parties continued living together in the marital home until July 2009, when the mother and the two younger children moved to Etowah County. The father also eventually moved to Etowah County, but the timing of that move is not indicated in the record.
At some point before the mother and the two younger children moved to Etowah County, J.B., the parties’ middle child, disclosed to the mother that W.B. had molested and raped him. The mother reported *1046 the allegations to the Department of Human Resources (“DHR”), and an investigation was conducted. The mother also met with the family’s pastor and the father in order to enable J.B., who was then approximately 14 years old, to disclose the abuse to the father. Both the mother and the pastor testified that, immediately after J.B. informed the father of the abuse, the father responded by stating that, although a woman had performed a sexual act on the father during a trip,' he had never had an affair while married to the mother. The pastor characterized the father’s reaction as “really odd.” The mother and the pastor each testified that the father never addressed J.B.’s allegations of abuse. We note that the record indicates that W.B. eventually pleaded guilty to a sexual-abuse charge in Mobile County and another sexual-abuse charge in Etowah County related to his abuse of J.B.[2]
The evidence is undisputed that J.B. was hurt because he thought either that the father did not believe him about the abuse allegations or that the father had defended W.B. At the time of the divorce hearing, the father resided in a home with his mother and W.B.
The father and the younger children had maintained some level of visitation until July 2010, when C.B., the youngest child, alleged that the father had touched her inappropriately. The mother moved to suspend the father’s visitation with C.B., and, in September 2010, the trial court entered a protection-from-abuse order granting that motion. It is undisputed that J.B. has refused to visit the father since C.B. made her allegations.
DHR investigated C.B.’s allegations against the father, and it determined that the allegations were “not indicated” for the alleged abuse. However, Elaine Young, who conducted a forensic evaluation of C.B., testified that C.B.’s description of the alleged abuse had been consistent over several interviews and that the child did not appear to have been coached.
The father testified that after the September 2010 protection-from-abuse order expired, he immediately attended one of the younger children’s sporting events. It is undisputed that the father’s presence at the event upset J.B. and that, even when the father was asked to leave on that basis, the father refused to do so until a law-enforcement officer asked him to leave. The mother then obtained a second protection-from-abuse order that remained in effect until the final hearing.
Two reports authored by J.B.’s counsel- or, June Nichols, were admitted into evidence; those reports were virtually identical, and the differences between the two are attributable to the passage of time between them. Nichols recommended that J.B. not be required to visit the father, citing a number of reasons for that recommendation. Among other things, Nichols reported that J.B. thinks that the father does not believe his abuse allegations against W.B. and that J.B. knows that the father is supporting W.B. Nichols stated that, when she spoke with the father about J.B., the father failed to address the facts and instead alleged only that the mother had alienated the younger children from him.
A report from Dr. David Wilson, a psychologist who evaluated the parties and the younger children pursuant to an order of the trial court, was admitted into evidence. Dr. Wilson stated that neither child wanted to see the father and that the youngest child had maintained her allegations that the father had touched her inap *1047 propriately. Dr. Wilson also reported that he conducted a session with the father and the youngest child together. Dr. Wilson stated that he was concerned that, during that session, the father failed to recognize that the youngest child was “highly anxious” and that the father “seemed more concerned about his own needs and rights to see her, but not understanding why she does not want to see him.” Dr. Wilson concluded that he saw no reason why the younger children should be required to visit the father.
We note that, during the final hearing, the trial court conducted in camera interviews of each of the three children, and those interviews are not transcribed in the record. Both parties and the children’s guardian ad litem agreed to the in camera interviews of the children.
With regard to a determination of a noncustodial parent’s rights of visitation with his or her child, our appellate courts have held that the paramount consideration is the best interests of the child. Taylor v. Taylor, 121 So.3d 987, 993 (Ala. Civ.App.2012); Sullivan v. Sullivan, 631 So.2d 1028, 1030 (Ala.Civ.App.1993). A trial court has discretion in determining visitation, and this court will not reverse a visitation award “unless it is so contrary to the evidence presented as to amount to plain abuse of that discretion and is therefore contrary to the best interests of the child.” Evans v. Evans, 668 So.2d 789, 789-90 (Ala.Civ.App.1995). In making that determination, the courts must consider the specific facts and circumstances of each case. DuBois v. DuBois, 714 So.2d 308, 309 (Ala.Civ.App.1998); Denney v. Forbus, 656 So.2d 1205, 1206 (Ala.Civ.App. 1995); and Sullivan v. Sullivan, 631 So.2d at 1029.
“In light of the strong public policy favoring visitation, however, in cases where a final judgment (as opposed to a pendente lite order) indefinitely divesting a parent of all visitation rights is entered, that judgment should be based on evidence that would lead the trial court to be reasonably certain that the termination of visitation is essential to protect the child’s best interests. Thus, notwithstanding the discretionary role of our learned trial judges, this court will continue to carefully scrutinize judgments divesting parents of all visitation rights with their children. See In re Norwood, 445 So.2d 301, 303 (Ala.Civ. App.1984) (reversing judgment denying all visitation to child’s mother); Naylor [v. Oden], 415 So.2d [1118,] 1120 [ (Ala.Civ.App.1982) ] (reversing judgment denying all visitation to child’s mother and stating that ‘the rights of natural parents, in visitation disputes as much as custody disputes, should be treated with great deference’); V.C. v. C.T., 976 So.2d 465, 469 (Ala.Civ.App. 2007) (main opinion indicating that ‘a total denial of visitation rights has been upheld only rarely’).”
M.R.D. v. T.D., 989 So.2d 1111, 1114 (Ala. Civ.App.2008).
The father argues that the trial court abused its discretion in denying him visitation with the two younger children. The father contends that M.R.D. v. T.D., supra, is on point in demonstrating that the trial court erred in denying him visitation with the children.
In M.R.D. v. T.D., supra, this court reversed a judgment that terminated M.R.D.’s visitation with the parties’ child based, in part, on allegations that M.R.D. had sexually abused the child. In that case, DHR found the abuse allegations “indicated,” and criminal charges were brought against M.R.D. but later dismissed. In that case, however, the child was approximately four years old and did not assert any specific allegation of abuse; *1048 a psychologist stated that it was not clear that the alleged abuse had actually taken place. This court reversed the judgment and remanded the case for the trial court to enter a visitation order containing sufficient conditions to protect the best interests of the child. M.R.D. v. T.D., supra.
The father acknowledges that a noncustodial parent’s visitation rights “may be restricted in order to protect children from conduct, conditions, or circumstances surrounding their noncustodial parent that endanger the children’s health, safety, or well-being.” Pratt v. Pratt, 56 So.3d 638, 641 (Ala.Civ.App.2010); see also M.R.D. v. T.D., supra. The father contends that, even if this court holds that the trial court did not err in refusing to award him unsupervised visitation with the children, this court should conclude that the trial court erred in failing to award him visitation that could be restricted to protect the children’s best interests. The father contends that, rather than denying him any visitation in the divorce judgment, the trial court could have fashioned an award of supervised visitation with the children.
In this case, however, the parties’ youngest child was seven years old when the alleged inappropriate touching by the father occurred, and she consistently described the details of that alleged abuse. The testimony of Dr. Wilson and Nichols indicated that the father was more concerned about allegations that the mother had influenced the children or with his own rights of visitation than he was about the youngest child’s allegations and her anxiety around him or J.B.’s concerns about the father’s not believing his abuse allegations. That evidence was also consistent with the pastor’s testimony that, when he was informed of J.B.’s abuse allegations against W.B., the father focused on marital issues and disregarded J.B.’s disclosures. It is undisputed that J.B. is in his late teens and is angry with the father for what J.B. perceives as the father’s defending W.B. Also, the younger child expressed a disinclination to visit the father. Neither Dr. Wilson nor Nichols recommended that the father be awarded any form of visitation with the two younger children.
We have carefully reviewed the evidence in the record on appeal, and we cannot say that that evidence does not support the trial court’s denial of visitation. Further, in this case, the trial court interviewed the children in camera. Those interviews were not transcribed; therefore, they are not set forth in the record on appeal, and, for that reason, this court must presume that the evidence the trial court received from the children supports its judgment denying the father visitation. See Hughes v. Hughes, 685 So.2d 755, 757 (Ala.Civ.App.1996) (“Although the trial court’s in camera interviews with the children were not transcribed and are not contained in the record, we presume that the interviews further support the trial court’s order.”). Accordingly, we cannot say that the father has demonstrated that the trial court erred in denying him visitation with the two younger children.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
PITTMAN, THOMAS, and DONALDSON, JJ., concur.
MOORE, J., concurs in the result, without writing.

. At the time the divorce judgment was entered, the parties' oldest child was over the age of majority, and, therefore, the divorce judgment did not address that child.

. The timing and details of the incident that resulted in W.B.’s being charged in Etowah County are not clearly set forth in the record on appeal.