THOMPSON, P.J., and PITTMAN, THOMAS, and DONALDSON, JJ., concur.

B.F.G.

v.

C.N.L.

2140771.

Court of Civil Appeals of Alabama.

March 11, 2016.

Lindsay C. Ronilo of The Law Offices of Vickers & White, P.L.L.C., Montgomery, for appellant.

Tracie T. Melvin and Mary Jane Oakley of Legal Services Alabama, Inc., Dothan, for appellee.

THOMPSON, Presiding Judge.

On July 22, 2014, B.F.G. ("the father") filed in the Houston Circuit Court ("the trial court") a complaint seeking to establish his paternity of O.M.W. ("the child"), who was born of his relationship with C.N.L. ("the mother"). According to the allegations in his complaint, the father is a resident of Nevada. The mother and the child had lived in Alabama for 11 months at the time the father filed the complaint. In his complaint, the father sought an award of joint custody of the child or, in the alternative, an award of reasonable visitation. We note that the parties do not dispute the issue of the father's paternity.

The mother answered the father's complaint and filed a counterclaim seeking sole custody and an order prohibiting any visitation between the father and the child. The mother also filed a petition for protection from abuse.

On August 26, 2014, the trial court entered an order transferring the paternity action and the mother's petition for an order of protection from abuse to the Houston Juvenile Court ("the juvenile court"), citing "jurisdiction" as the basis for that order. However, on October 24, 2014, the mother moved the juvenile court to dismiss the paternity action then pending in that court, arguing that the child was not "dependent," as that term is defined in § 12–15–102(8), Ala.Code 1975. Therefore, the mother argued, the juvenile court did not have jurisdiction under § 12–15–114, Ala.Code 1975, which provides that a juvenile court has jurisdiction over dependency actions.

On November 7, 2014, the juvenile court entered an order stating that both the mother and the father had moved for an order transferring the paternity action back to the trial court.[1] The juvenile court granted the joint motion and ordered that the paternity action be transferred to the trial court.[2]

The trial court conducted an ore tenus hearing. At that hearing, the parties stipulated to the issue of the father's paternity of the child, that the mother would have custody of the child, and that the father would pay child support pursuant to the terms of a Nevada court order. Thus, the only issue presented to the trial court for its determination was whether the father should be allowed to exercise visitation with the child. The mother opposed any award of visitation, but she requested that, if it was awarded, visitation be conducted in Alabama and supervised. The father testified that he wanted the child to visit him in Nevada on alternating holidays and in the summer.

---

1. The record does not contain a motion from either party seeking to transfer the paternity action to the trial court or a written document in which the father joined the mother's motion in the juvenile court seeking to dismiss the paternity action.

2. That order did not reference the mother's petition for protection from abuse.

On February 27, 2015, the trial court entered a judgment adjudicating the father's paternity, awarding the parties joint legal custody of the child and awarding the mother physical custody, and denying the father's request for an award of visitation. On March 16, 2015, the father filed a post-judgment motion, and the trial court denied that motion on May 8, 2015. The father filed a notice of appeal to this court on June 18, 2015.

In their briefs submitted to this court, neither party has addressed the issue of the jurisdiction of the trial court. However, "jurisdictional matters are of such magnitude that we take notice of them at any time and do so even *ex mero motu.*" *Nunn v. Baker*, 518 So.2d 711, 712 (Ala.1987).

If this court treats the father's petition filed in the Alabama courts as one seeking to establish his paternity under the Alabama Uniform Parentage Act ("the AUPA"), § 26–17–101 et seq., Ala.Code 1975, and the Alabama Juvenile Justice Act ("the AJJA"), § 12–15–101 et seq., Ala. Code 1975, we note that the AUPA specifies that the juvenile court has jurisdiction over such actions. However, this court has held that the juvenile court's jurisdiction over paternity actions is no longer exclusive, given the language of the current AUPA and the AJJA. *See Brock v. Herd*, 187 So.3d 1161, 1164 (Ala.Civ.App.

2015) ("Based upon the plain language of § 26–17–104 and the omission of the term 'exclusive' from § 12–15–115, we conclude that the AJJA does not vest juvenile courts with exclusive original jurisdiction to adjudicate paternity, and, thus, the circuit court in the case before us properly exercised jurisdiction to adjudicate the paternity of the child."). Further, there is no indication in the record of the existence of a custody order of a court of another state that would indicate that Alabama courts could not enter a custody judgment pertaining to the child under the Uniform Child Custody Jurisdiction and Enforcement Act (the "UCCJEA"), § 30–3B–101 et seq., Ala.Code 1975, and neither party has argued that the trial court lacked jurisdiction to enter its judgment.[3] Accordingly, we conclude that the trial court properly exercised jurisdiction over the parties' claims.

The record indicates that the mother and the father were involved, off and on, in a relationship for a number of years. The parties' child was born in 2007, and the mother and the child alternated living in Alabama and Las Vegas, Nevada, where the father resides. In 2013, the mother and the child were living in Alabama, and the mother allowed the child, who was then six years old, to visit the father in Nevada for a few weeks. The mother testified that she traveled to Nevada in

---

**3.** The parties never married. In 2009, the parties submitted to genetic testing, and that testing indicated a 99.99% probability that the father was the child's biological father. The parties briefly lived together in Nevada in 2013, and their testimony indicates that a Nevada court entered an order requiring the father to pay child support. The parties agreed that that Nevada order made no custody determination. Neither party submitted the Nevada order to the trial court, and it is not included in the record on appeal. Accordingly, this court cannot say that a Nevada court would have continuing jurisdiction under the UCCJEA. Also, neither party argued before the trial court whether the issues of paternity and custody were implicitly determined by virtue of the fact that the Nevada order required the father to pay child support. *See, e.g., Ex parte Washington*, 176 So.3d 852, 853 (Ala.Civ.App.2015) (holding that, in Alabama, "an order requiring a man to pay child support is an implicit judicial determination of paternity"). Given the posture in which this case has been presented to the Alabama courts, we cannot conclude that a court of another state would have jurisdiction to determine the parties' claims.

August 2013 to visit the child and to assist the father in moving into a new home.

According to the mother, during that visit, the child went into a room with the father's teenaged son (hereinafter "the teenaged son") from a previous relationship, and, the mother said, the child later reported to the mother that the teenaged son had exposed himself to her. The mother immediately informed the father. The father testified that he questioned the child immediately following the event and that she denied the sexual-abuse allegation. However, the mother called law enforcement, and the teenaged son was arrested as a result of the subsequent investigation into the child's report. The teenaged son was charged with at least nine different offenses, and he eventually pleaded guilty to those charges. Although it is not entirely clear from the parties' testimony, it appears that the teenaged son was charged with regard to other acts that had occurred before the mother visited Nevada to see the child and the father. There is also evidence tending to indicate that the teenaged son had abused the child when he had accompanied the father for a December 2012 visit to Alabama but that the child had not disclosed that abuse until after the abuse in Nevada was discovered. As a result of his guilty plea and convictions for the charges that arose in Nevada, the teenaged son was placed on four years' probation, is registered as a sex offender, and might be required to remain on the Nevada sex-offender registry if he violates his probation. He is not permitted to have any contact with the child.

The teenaged son, who was 19 years old at the time of the hearing in this matter, lives with the father in the same home in which the abuse of the child occurred.

The father testified that, although the teenaged son pleaded guilty to the sexual-abuse charges, he does not believe that the abuse actually occurred, primarily because, he says, the child initially denied to him that anything had occurred. The father stated, however, that he would ensure that the teenaged son had no contact with the child when she visited the father in Nevada. The father explained that his plan was that the teenaged son would stay nearby with the child's paternal grandparents for any period in which the child visited the father. The father admitted on cross-examination that he did not know if the teenaged son's residency restrictions, imposed as a result of his convictions for the sexual abuse of the child, would allow him to stay in the paternal grandparents' home, but the father did not believe there would be a problem. The father stated that, if he were awarded visitation in Nevada, he would investigate whether the teenaged son could stay with the paternal grandparents. The father also added that the teenaged son might not be living with him soon, because the teenaged son wanted to move into his own place.

The mother and the child returned to Alabama after the abuse incident in August 2013. The father has not visited the child since her return to Alabama, and he visited with her for only a few minutes after the Nevada court hearing when the teenaged son pleaded guilty to the sexual-abuse charges.[4] The father testified that he wanted visitation to resume and that he was willing to phase in visitation and to conduct visitation by video using electronic devices. However, he stated that he ultimately wanted the child to visit him in Nevada on alternating holidays and during

4. We note that, according to the mother's testimony, the district attorney in Nevada provided her and the child a security detail when they traveled to Nevada for the criminal trial.

the summer.[5] Although the father states in his brief on appeal that he testified before the trial court that "he was willing to exercise visitation in Alabama and bear the costs," the record does not support that contention. The record instead indicates that the father stated that, at least initially, he was willing to pay the majority of the costs of visitation. The father also stated that he wanted to resume speaking to the child on the telephone in order to redevelop their relationship so that she could visit him, but the father specified that he did not want a visitation award that required him to visit in Alabama "for the next 10 years."

The mother testified that she opposed visitation between the father and the child because she did not believe that the father would take action to ensure that the child was not in the presence of the teenaged son. The mother opposed telephone contact or visitation by video between the father and the child because of the possibility that the child would hear the teenaged son in the background and because the father had exposed the child to age-inappropriate movies and video games in the past. The mother also pointed out that the child knew that the father did not believe the child about the sexual abuse by the teenaged son. In addition, the mother testified that she had safety concerns because the father had threatened her. According to the mother, after the sexual-abuse allegations arose in Nevada, the father was angry that the mother had refused to drop the sexual-abuse charges

against the teenaged son, and, she said, the father had told her that if she did not "make the right decisions" concerning the sexual-abuse allegations, she would "be dead." The mother also testified that the father had telephoned her after she and the child had returned to Alabama and had told the mother that her life might be in danger and that she needed to be in the witness-protection program.

Suzy Peters, a counselor for the Southeast Alabama Child Advocacy Center who investigated the allegations that the teenaged son had abused the child while in Alabama in December 2012, testified that she listened to a voice-mail message the father had left for the mother in which the father stated that the mother needed to be in the witness-protection program.[6] We also note that, although the father testified that the teenaged son could not have abused the child during the December 2012 visit because the child was never out of the father's sight, Peters testified that, based on her interview with the child, she believed there was probable cause to arrest the teenaged son with regard to that alleged incident.

Laura Bertagnolli, the child's counselor, testified that the child has some anxiety issues and that the child has insisted to her that she does not want to visit the father in Nevada. Bertagnolli testified that she did not believe that visits in Nevada were in the child's best interests because of the length of time that the child had not seen the father and because the

---

**5.** In his brief to this court, the father asserts that he was not asking for a "standard" award of visitation. We note that an award providing for alternating weekend visitation would not be feasible given the distance between the parties' homes. The father clearly stated that he wanted visitation with the child on alternating holidays and during the summer.

**6.** We note that the mother filed a protection-from-abuse petition in the trial court with regard to that threat because it was made while she was living in Alabama. The mother testified that she agreed to dismiss that protection-from-abuse action because she changed her telephone number and the parties agreed not to communicate.

child knows that the father does not believe her that the sexual abuse occurred. Bertagnolli also stated that returning to the location of the sexual abuse could be a "trigger" for the child, and the father still lived in the house in which the abuse occurred and was insisting that the child visit him there. Bertagnolli testified that she believed that it would be helpful to the child if the father changed his opinion about whether the abuse occurred or, if the father could not do so, if the father attended counseling to address how to handle visitation given his lack of belief that the abuse occurred.

On appeal, the father argues that the trial court erred in denying his request for an award of scheduled visitation with the child. Generally, a parent is afforded "reasonable rights of visitation" with his or her child. *See Pratt v. Pratt,* 56 So.3d 638, 641 (Ala.Civ.App.2010). In *Pratt v. Pratt,* supra, this court stated:

" 'The trial court has broad discretion in determining the visitation rights of a noncustodial parent, and its decision in this regard will not be reversed absent an abuse of discretion.' *Carr v. Broyles,* 652 So.2d 299, 303 (Ala.Civ.App.1994). In exercising its discretion over visitation matters, ' "[t]he trial court is entrusted to balance the rights of the parents with the child's best interests to fashion a visitation award that is tailored to the specific facts and circumstances of the individual case." ' *Ratliff v. Ratliff,* 5 So.3d 570, 586 (Ala.Civ.App.2008) (quoting *Nauditt v. Haddock,* 882 So.2d 364, 367 (Ala.Civ.App.2003) (plurality opinion)). A noncustodial parent generally enjoys 'reasonable rights of visitation' with his or her children. *Naylor v. Oden,* 415 So.2d 1118, 1120 (Ala.Civ.App. 1982). However, those rights may be restricted in order to protect children from conduct, conditions, or circum-

stances surrounding their noncustodial parent that endanger the children's health, safety, or well-being. *See Ex parte Thompson,* 51 So.3d 265, 272 (Ala. 2010) ('A trial court in establishing visitation privileges for a noncustodial parent must consider the best interests and welfare of the minor child and, where appropriate, as in this case, set conditions on visitation that protect the child.'). In fashioning the appropriate restrictions, out of respect for the public policy encouraging interaction between noncustodial parents and their children, *see* Ala.Code 1975, § 30–3–150 (addressing joint custody), and § 30–3–160 (addressing Alabama Parent–Child Relationship Protection Act), the trial court may not use an overbroad restriction that does more than necessary to protect the children. *See Smith v. Smith,* 887 So.2d 257 (Ala.Civ.App.2003), and *Smith v. Smith,* 599 So.2d 1182, 1187 (Ala.Civ.App.1991)."

56 So.3d at 641.

Although before the trial court the father sought a liberal, unsupervised visitation award, in his brief on appeal the father argues that the "restrictions" the trial court placed on his visitation were overbroad and do more than is necessary to protect the interests of the child. The father cites only *Pratt v. Pratt,* supra, and *K.D. v. Jefferson County Department of Human Resources,* 88 So.3d 893 (Ala.Civ. App.2012), both of which addressed whether a restriction on visitation requiring that visitation be supervised was appropriate under the facts of those cases. In his appellate brief, the father has not cited any authority concerning the outright denial of visitation to a noncustodial parent. However, we note that a denial of rights of visitation may be affirmed if the trial court determines that such a decision serves the

best interests of the child. *M.B. v. L.B.*, 154 So.3d 1043, 1047 (Ala.Civ.App.2014).

With regard to the issue of visitation, in its February 27, 2015, judgment, the trial court made the following factual findings and legal determinations:

"The Court has considered the father's request for a visitation order but finds that court-ordered visitation is neither practical nor in the child's best interest at this time. The evidence presented at trial established that the father accused the parties' minor child ... of lying when the allegations of sexual abuse were first made by [the child] against the father's teenage son. Additionally, the mother testified at trial that [the child], following the allegations of sexual abuse, actually expressed fear of her father. The evidence presented at trial further established that the father, after his son was accused of sexual abuse, threatened the mother by telling the mother that she would 'be dead' if she 'did not make the right decision,' and that the father left a voice message on the mother's phone that the mother may need to go into a 'witness protection' program. As to the father's request to be allowed visitation in Nevada, the mother testified that the father's home is the very location where the acts of sexual abuse occurred. Additionally, the mother testified that on a previous visit to Nevada to see the father, the child was exposed to inappropriate video games and movies. The mother testified that she was concerned that the father's home in Nevada would not be appropriate for a girl of [the child's] age. Given this recent and tumultuous history involving the parties and [the child], and given the fact that [the child] remains in counseling and therapy due to acts of sexual abuse committed against her by the father's son, the Court finds that the imposition of a specific and mandatory visitation schedule would be more harmful than beneficial to the child. However, nothing in this order shall be construed as prohibiting the parties from agreeing upon such visitation at reasonable times and places if the parties jointly determine that such visitation is in the best interest of the child. Further, the Court notes that this order is subject to modification at any time in the future should there be a material change of circumstances which would cause the Court to find that a specific visitation schedule is in the best interest of the child."

Thus, the trial court determined that establishing a visitation schedule between the father and the child would not serve the child's best interests. The trial court was in the best position to observe the witnesses as they testified and to assess their demeanor, and, therefore, that court was in the best position to determine the veracity of the witnesses' testimony and to resolve factual issues. *Ex parte Fann*, 810 So.2d 631, 633 (Ala.2001). The evidence indicates that the father did not believe the child concerning the abuse that occurred in Nevada, and he denied any possibility that any abuse could have occurred in Alabama. Although the father stated that he would ensure that the child not have any contact with the teenaged son, the trial court could have concluded that, given his belief that no abuse had occurred, the father would not do so. Further, the father threatened the mother after she aided in the prosecution of his teenaged son for the sexual abuse of the child. The evidence supports a finding that the child, who is being treated for anxiety related to the sexual abuse by the father's teenaged son, understands that the father does not believe that the abuse occurred, and she has expressed a desire not to visit the father. The father requested visitation at his Nevada home,

the location of the abuse, in spite of the fact that the child's counselor believed that visiting that home could be a trigger for the child. He stated that he was willing to visit in Alabama for a period in order to gain visitation in Nevada.

During the hearing, the trial court stated that its primary concern in resolving the dispute between the parties was the protection of their child. Given the evidence in the record and the presumption in favor of the trial court's factual determinations, we cannot say that the father has demonstrated that the trial court erred in entering its judgment denying his claim for visitation with the child.

The father also asserts in his brief on appeal that the trial court impermissibly placed his visitation at the discretion of the mother. The father is correct that, in general, the courts disallow an award that places visitation with the noncustodial parent at the discretion of the custodial parent. *K.L.U. v. M.C.*, 809 So.2d 837, 841 (Ala.Civ.App.2001); *Bryant v. Bryant*, 739 So.2d 53, 56 (Ala.Civ.App.1999). However, we disagree with the father's characterization of the effect of the judgment in this case as placing visitation in the discretion of the mother. In its February 27, 2015, judgment, the trial court determined that the father is not entitled to scheduled visitation with the child at this time, and this court has affirmed that determination. The trial court also stated that the parties *could* jointly agree to visitation if they determined that visitation served the child's best interests; that judgment provides that "nothing in this order shall be construed as prohibiting the parties from agreeing" to visitation. However, nothing in the trial court's February 27, 2015, judgment specifies that the father was to be awarded visitation at the mother's discretion; in other words, that judgment does not deny the father a schedule of visitation and then provide that visitation is to occur upon the parties' agreement. Nothing in the April 16, 2015, judgment states that the father is or shall be awarded visitation upon the parties' agreement or at the mother's discretion.

The reason for not allowing visitation at the discretion of the custodial parent is the possibility that the custodial parent will deny visitation. *Pratt v. Pratt*, 56 So.3d at 643. In this case, the purpose behind not allowing visitation at the discretion of the custodial parent is not at issue. Nothing in the February 27, 2015, judgment requires that the mother afford the father visitation, and the mother would not be in contempt of the judgment for refusing to agree to allow visitation. Because the trial court has already denied the father the right to visitation, its concession that the mother could exercise discretion to allow the father and the child to visit operates only to allow visitation to which the father does not have a right. We cannot say that the father has demonstrated that, given the specific facts of this case, the trial court impermissibly placed visitation at the discretion of the mother, the custodial parent.

AFFIRMED.

PITTMAN, THOMAS, and DONALDSON, JJ., concur.

MOORE, J., concurs in part and dissents in part, with writing.

MOORE, Judge, concurring in part and dissenting in part.

I concur in the main opinion to the extent it determines that the Houston Circuit Court ("the trial court") had subject-matter jurisdiction over the civil action filed by B.F.G. ("the father"). I respectfully dissent from the main opinion's affirmance of the judgment of the trial court.

In its final judgment, the trial court addressed visitation as follows:

*"The Court has considered the father's request for a visitation order but finds that court-ordered visitation is neither practical nor in the child's best interest at this time.* The evidence presented at trial established that the father accused the parties' minor child ... of lying when the allegations of sexual abuse were first made by [the child] against the father's teenage son. Additionally, the mother testified at trial that [the child], following the allegations of sexual abuse, actually expressed fear of her father. The evidence presented at trial further established that the father, after his son was accused of sexual abuse, threatened the mother by telling the mother that she would 'be dead' if she 'did not make the right decision,' and that the father left a voice message on the mother's phone that the mother may need to go into a 'witness protection' program. As to the father's request to be allowed visitation in Nevada, the mother testified that the father's home is the very location where the acts of sexual abuse occurred. Additionally, the mother testified that on a previous visit to Nevada to see the father, the child was exposed to inappropriate video games and movies. The mother testified that she was concerned that the father's home in Nevada would not be appropriate for a girl of [the child]'s age. Given this recent and tumultuous history involving the parties and [the child], and given the fact that [the child] remains in counseling and therapy due to acts of sexual abuse committed against her by the father's son, *the Court finds that the imposition of a specific and mandatory visitation schedule would be more harmful than beneficial to the child. However, nothing in this order shall be construed as prohibiting the parties from agreeing upon such visitation at reasonable times and places if the parties jointly determine that such visitation is in the best interest of the child.* Further, the Court notes that this order is subject to modification at any time in the future should there be a material change of circumstances which would cause the Court to find that a specific visitation schedule is in the best interest of the child."

(Emphasis added.)

I can construe the judgment in only one way—as denying the father any specific visitation schedule but permitting the father visitation at "reasonable times and places" upon the agreement of C.N.L. ("the mother"). The trial court did not deny the father visitation with the child; the judgment merely denies the father's request for a mandatory and specific visitation schedule. If the judgment had denied the father visitation altogether, the parties would have been precluded from agreeing to paternal visitation, subject to the contempt powers of the trial court. However, the judgment clearly and specifically allows the father to visit the child if both parties agree that it is in the child's best interest.[7]

In my opinion, the judgment in this case cannot be distinguished in any meaningful way from other judgments this court has

7. Thus, I do not join any aspect of the main opinion analyzing the judgment as one denying visitation. I note, however, that, due to the fundamental right of a noncustodial parent to association with his or her child, this court carefully scrutinizes any judgment denying visitation to assure that the "judgment [is] based on evidence that would lead the trial court to be reasonably certain that the termination of visitation is essential to protect the child's best interests," *M.R.D. v. T.D.,* 989 So.2d 1111, 1114 (Ala.Civ.App.2008). I do not agree with any statement of the law made in the main opinion to the contrary.

reversed for giving the custodial parent control over the visitation of the noncustodial parent. *See, e.g., K.L.U. v. M.C.,* 809 So.2d 837 (Ala.Civ.App.2001) (judgment awarded father supervised visitation and trial court orally stated that visitation would be at times and places to be determined by the parties); *K.L.R. v. L.C.R.,* 854 So.2d 124, 133 (Ala.Civ.App.2003) (reversing judgment awarding mother " 'reasonable access of visitation' " with children); *R.K.J. v. J.D.J.,* 887 So.2d 915, 919 (Ala.Civ.App.2004) (reversing judgment awarding mother supervised visitation " 'at reasonable times and places' "); *L.L.M. v. S.F.,* 919 So.2d 307 (Ala.Civ.App.2005); *D.B. v. Madison Cty. Dep't of Human Res.,* 937 So.2d 535 (Ala.Civ.App.2006) (plurality opinion) (recognizing that a judgment allowing custodial parent complete discretion over noncustodial parent's visitation with child was reversible error); *A.M.B. v. R.B.B.,* 4 So.3d 468 (Ala.Civ.App.2007) (reversing judgment leaving the noncustodial parent's visitation rights to the sole discretion of the custodial parent or other legal custodian of the child); and *C.W.S. v. C.M.P.,* 99 So.3d 864, 869 (Ala.Civ.App.2012) (reversing judgment insofar as it awarded father supervised visitation at times to be " 'mutually agreed' " on by the parties). It is true that the judgment in the present case does not command that the father shall have visitation with the child, but, like in the cases cited above, it conditions visitation on the agreement of the custodial parent, leaving the mother total discretion as to the father's visitation. We reversed the judgments in the above-cited cases not only because they enabled the custodial parent to completely deny visitation, but also because they impermissibly delegated the judicial function to de-cide visitation disputes to a third party. *See Pratt v. Pratt,* 56 So.3d 638, 644 (Ala.Civ.App.2010). In this case, the judgment is most extreme because it grants the mother not only the right to determine the mode and manner of visitation, but also the right to decide whether the father shall have any visitation at all. A noncustodial parent's right to visitation should never be premised on the agreement of the custodial parent. *See Cowart v. Burnham,* 204 So.3d 880, 880 (Ala.Civ.App.2015) (Moore, J., concurring in part and dissenting in part) (arguing that trial court cannot delegate judicial function to custodial parent to decide when suspension of noncustodial parent's visitation should end).[8]

The father correctly argues in his brief to this court that the trial court effectively awarded him visitation at the discretion of the mother. The judgment expressly requires the parties to "mutually agree" as to the reasonableness of visitation, including its time and place, before any visitation may occur. As such, the judgment gives the mother "the ability to deny visitation on the grounds that it was not 'reasonable.' " *R.K.J. v. J.D.J.,* 887 So.2d at 919. This court has consistently held that it is reversible error for a trial court to vest a custodial parent with such discretion over visitation by a noncustodial parent. *See Pratt v. Pratt, supra.* Based on the reasoning of that line of cases, the judgment should be reversed. Thus, I dissent from the affirmance of the judgment.

---

8. For that reason, I do not agree with the main opinion that, if the trial court had denied the father visitation, it would have been permissible for the trial court to give the mother discretion "to allow visitation to which the father does not have a right." —— So.3d at ——. In my opinion, such a provision would violate the law.