Rel: April 24, 2026

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## OCTOBER TERM, 2025-2026

—————————————

### CL-2025-0210

—————————————

**Brandy Corbell Holland**

**v.**

**Michael Samuel Holland**

**Appeal from Walker Circuit Court**
**(DR-21-900314)**

FRIDY, Judge.

Brandy Corbell Holland ("the wife") appeals from a judgment of the Walker Circuit Court divorcing her from Michael Samuel Holland ("the husband"). In the judgment, the trial court awarded the wife rehabilitative alimony, divided the marital property, awarded the parties

joint legal custody of their minor children and awarded sole physical custody of those children to the husband, subject to the wife's visitation, and ordered the wife to pay child support. For the reasons set forth herein, we affirm the judgment in part and reverse it in part.

Background

The parties married in 2004; three children were born during the marriage, but the oldest, S.H., had already reached the age of majority when the trial began in June 2024. The two younger children, E.H. and H.H., were sixteen years old and twelve years old, respectively, when the trial began.[1]

The husband commenced the current divorce action in October 2021, and the trial took place over five days in June, August, and November 2024. At the trial, the husband testified that, in the years leading up to the commencement of the action, he and the wife had each filed divorce complaints but then had dismissed those complaints. The wife testified that, just before the husband had commenced the current

---

[1]The wife also had an adult child who was born before the parties married and who the husband said that he had raised and considered his own child.

action, they had a conversation during which they agreed that "they just [could not] do this anymore." The wife said that she did not have the financial means to pursue a divorce, but the husband said that he did, so he commenced the present divorce action.

It is undisputed that, when the first two divorce actions were commenced, neither the husband nor the wife moved out of the marital residence. When the husband commenced the present action, it appears that, at first, the parties again maintained the status quo. Both remained in the marital residence. The husband said that they continued to have sexual relations; the wife said that they rarely had sex. They celebrated Christmas and a child's birthday together, but, the wife said, "everything was different after that divorce filing."

The wife testified that, in the year leading up to the commencement of the present divorce action, the husband did not regularly give her money and that, at times, she had had to use her father's check card to make purchases. The wife's father died in January 2022, and she began receiving his pension check. The husband said that he added the wife to one of his individual bank accounts in February 2022. The parties agreed that some of the pension money the wife received was used to pay for a

family beach trip in the spring of 2022. The husband said that, at that time, he still had hopes for making the marriage work.

The wife moved out of the marital residence in June 2022, going to stay briefly with a friend and then moving into a rental house in July 2022. She said that, when she was still living in the marital residence, every time the husband got mad at her, he swore and told her to leave and that nobody, including the children, wanted her there. The husband testified that all the children had asked for the husband and the wife to divorce and had "begged" for the wife to leave the marital residence, in part because of the wife's behavior, which included essentially living on the front porch and sometimes going weeks without a shower.

The husband testified that each of the children had threatened suicide because of the way the wife made them feel. He said that the wife was mean to the youngest child, and he described an occasion when the wife urinated on the garage floor and in the bedroom and "pitched a tantrum" on a day when the youngest child was at home preparing for a pageant. He said that the youngest child appeared to be nervous when he took her to visit the wife and that she has cried "uncontrollably" when preparing to visit the wife.

4

All three children testified during the trial; however, because of a problem with the recording equipment on the day they testified, their testimony was not taken down. On July 29, 2025, four months after the notice of appeal was filed, the wife filed a motion in the trial court asking that it approve a statement of the evidence that she said she had prepared pursuant to Rule 10(d), Ala. R. App. P., and asking to supplement the record on appeal with the statement.[2] In the motion, the wife's attorney, who had not been the wife's attorney during the trial, indicated that she had communicated with the husband's attorney about stipulating to the content of the children's testimony that had been omitted from the trial transcript but that the husband's attorney had advised her that she could not agree to such a course of action. The wife filed the statement of the evidence in the trial court and served the statement on the husband's attorney on the same day that she filed the

---

[2]Rule 10(d) provides, in part, that, "[i]f no report of the evidence or proceedings at a hearing or trial was made, or if a transcript is unavailable, the appellant may prepare a statement of the evidence or proceedings from the best available means, including the appellant's recollection."

motion for its approval and to supplement the record. On November 10, 2025, the trial court granted the wife's motion.[3]

According to the statement of the evidence, H.H., the parties' twelve-year-old daughter, expressed a desire to have a relationship with the wife. E.H., the parties' sixteen-year-old daughter, said that she had a strained relationship with the wife, which E.H. believed was the result of the "toxicity" of the husband and the wife's relationship. E.H. acknowledged that the wife had reached out to her, but she said that she was "not in a place where she [was] ready to work on her relationship" with the wife and that she was not ready to obtain counseling to assist her with that relationship. She added that she wanted to see the wife "in accordance with her own wishes and desires" once the wife became healthier. S.H., the parties' nineteen-year-old son, testified that the parents' relationship was so toxic that he believed they should no longer

_____

[3]We recognize that, under Rule 10(d), Ala. R. App. P., the wife was required to serve her statement of the evidence on the husband no more than twenty-eight days after she filed her notice of appeal. The wife filed her notice of appeal on March 24, 2025, and did not serve the husband with her statement of the evidence until July 29, 2025, far beyond the time allowed. However, the husband did not object to the statement, move to strike it, or challenge the trial court's subsequent approval of it, and he does not challenge on appeal either the statement or the trial court's approval of it.

be married. He said that he wanted to visit the wife when his schedule permitted and that he had maintained contact with her.

The evidence was undisputed that the wife was in poor health physically and mentally. At one point, after leaving the marital residence in June 2022, she was hospitalized and reached out to the husband for help. She testified that, when she asked him to help her, she told him that she did not want him to think that she wanted to get back together and that she did not want him to touch her in an intimate manner. The husband testified that, when the wife contacted him, he had never seen her so sick, and she moved back into the marital residence in October 2022. The husband testified that he and the children wanted to do what they could to help her get better.

After October 2022, the husband said, he and the wife talked about reconciling but could not come to a decision. He acknowledged that they were sexually intimate on occasion but said that the wife was also abusive toward him, and he described some of their relationship during that time as being "horrendous." The wife testified that, during Christmas 2022, the husband told her that he had talked with his

7

attorney about dropping the divorce action, but she told him: "No. That's just not your decision to make, no."

After Christmas 2022, the husband and the children drove to West Virginia to ski. The wife said that, initially, she was not going to go on the trip, but then she flew up to meet them. The husband said that he met her flight and saw that she was wearing her wedding ring. He said that that had upset him because he and the wife had not spoken to the children about the possibility of a reconciliation, which, it is undisputed, the children did not want. The husband said that the wife told him that she could not get the ring off her finger.

The husband testified that he learned that the wife was seeing another man and having sexual relations with that man while the two of them had been discussing reconciliation. He said that he realized then that the relationship he had with the wife "was a farce." In March 2023, the husband said, he told the wife that she had to leave the marital residence because she had resumed her old behavior, which the husband described as toxic, adding that her relationship with the family was abusive. The husband and the children went to the beach for spring break

8

in 2023 without the wife. When they returned, the husband said, the wife left the marital residence.

Pursuant to Rule 32, Ala. R. Jud. Admin., the husband and the wife each submitted a child-support-obligation income statement/affidavit, also known as a Form CS-41. The husband's affidavit indicated that he had gross monthly employment income of $10,000, self-employment income of $3,000, and other employment-related income of $650, for a total gross income of $13,650 per month. He indicated that he did not have any work-related child-care expenses and that he did not make payments to cover the children's health-care coverage.

In addition to the income he included in his income affidavit, the husband testified that one of his employers provided him with a credit card on which he was authorized to charge up to $1,500 per month. He said that he used the card for both business and personal expenses. An employer also paid for his family health-insurance coverage. An employer also paid the husband's country-club dues of approximately $400 per month. The husband agreed that he received a salary and benefits totaling approximately $210,000 per year. He also acknowledged that he sometimes received bonuses.

It was undisputed that the wife, who years earlier had been a registered nurse, had not been employed for many years. In her income affidavit, she indicated that she received $1,586 per month from her father's pension and that she had no other income. She also did not pay any money toward child-care expenses or the children's health-care coverage.

At the end of the husband's case-in-chief and again after the close of all the evidence, the wife's attorney asked for the action to be dismissed because, the attorney argued, the parties had reconciled during the pendency of the action and, therefore, the trial court had lost jurisdiction. The trial court deferred ruling on the motion to dismiss until the end of the trial, at which time it denied the motion, explaining that, when the parties resumed living together, it was because the wife was sick, the husband was providing care and support for her, and "mere sickness is not enough." The trial court added that, even when parties to a divorce are trying to reconcile, "both people have to have a meeting of the minds with the intent … to be married permanently and fulfill all the duties of it." The trial court pointed out that the wife was involved in a sexual relationship with another man during that time, then said: "[N]obody has

testified they want to be back together. If anything, I've heard it's been very toxic. The evidence does not show me that they both want this relationship or this marriage to keep going."

On December 17, 2024, the trial court entered a judgment divorcing the parties, awarding the wife rehabilitative alimony of $750 per month for four years, dividing the marital property, awarding the husband and the wife joint legal custody of the children and the husband sole physical custody of the children, subject to the wife's visitation, ordering the wife to pay child support of $413.10 per month for the younger children, and apportioning the parties' out-of-pocket medical expenses, among other things not relevant to the appeal. The wife timely filed a motion to alter, amend, or vacate the judgment, which the trial court denied. The wife appeals.

Standard of Review

A trial court is afforded broad discretion in deciding matters presented in a divorce case, Ex parte Bland, 796 So. 2d 340, 344 (Ala. 2000). When a trial court's judgment in a divorce action is based on ore tenus evidence, the judgment is presumed correct. Kennedy v. Kennedy, 743 So. 2d 487 (Ala. Civ. App. 1999). A judgment based on a trial court's

11

factual findings after it hears ore tenus evidence will be overturned only when those findings are unsupported by the evidence or are plainly and palpably wrong. Robinson v. Robinson, 422 So. 3d 1121, 1124 (Ala. Civ. App. 2025). We review questions of law de novo. Alabama Republican Party v. McGinley, 893 So. 2d 337, 342 (Ala. 2004).

## Analysis

The wife contends that the trial court erred in finding that she and the husband did not reconcile during the pendency of the litigation; she argues that their reconciliation abrogated the cause of action. The wife is correct that, in Alabama, upon reconciliation of the parties, the trial court is without jurisdiction over a divorce proceeding because reconciliation abrogates the cause of action. James v. James, 369 So. 2d 811, 812 (Ala. Civ. App. 1979) (citing McNutt v. Beaty, 370 So. 2d 998 (Ala. 1979)). A trial court generally must dismiss a divorce action if it finds that the parties to that action have reconciled. Pride v. Pride, 631 So. 2d 247, 248 (Ala. Civ. App. 1993).

> "Whether there has been a reconciliation, however, is a question of fact which the trial court must determine from all the evidence before it since '[r]econciliation is largely a state of the minds of both of the parties to be determined from all of the evidence and reasonable and proper inferences therefrom.'"

12

Pride, 631 So. 2d at 248-49 (quoting Rikard v. Rikard, 387 So. 2d 842, 845 (Ala. Civ. App. 1980)). In Rikard, this court explained that, "[a]fter a separation, if the parties casually cohabit, or if the cohabitation is sporadic, or if it is conditional or provisional, there is no reconciliation because of the absence of the required intent." 387 So. 2d at 845.

Here, although the parties continued to live in the marital residence after the husband commenced the divorce action in October 2021, the wife said that "everything was different." She testified that she and the husband agreed that they could not continue their relationship but that she did not have the financial resources to end the relationship. When she became ill after leaving the marital residence, the wife said, she asked the husband to help her but explicitly told him she was not seeking a reconciliation. The evidence is undisputed that the wife was in a sexual relationship with another man after she had moved back into the marital residence.

Our review of the record indicates that substantial evidence supports the trial court's determination that the husband and the wife were in a toxic relationship and that, although they may have engaged in sexual relations now and then, there did not seem to be a time after

13

the commencement of the divorce action when both of them agreed at the same time that they should reconcile. Based on the record before us, we cannot say that the trial court's conclusion that the parties had not reconciled during the pendency of the litigation is plainly and palpably wrong. Therefore, the divorce action was not abrogated, and the trial court retained jurisdiction over it.

The wife also contends that the trial court erred in awarding her rehabilitative alimony rather than periodic alimony and in awarding her only $750 per month in alimony. Before reaching the merits of this issue, we must first determine whether the trial court complied with § 30-2-57, Ala. Code 1975, in establishing the type and amount of alimony it awarded to the wife. That statute provides, in pertinent part:

> "(a) Upon granting a divorce or legal separation, the court shall award either rehabilitative or periodic alimony as provided in subsection (b), if the court expressly finds all of the following:
>
> > "(1) A party lacks a separate estate or his or her separate estate is insufficient to enable the party to acquire the ability to preserve, to the extent possible, the economic status quo of the parties as it existed during the marriage.
> >
> > "(2) The other party has the ability to supply those means without undue economic hardship.

"(3) The circumstances of the case make it equitable.

"(b) If a party has met the requirements of subsection (a), the court shall award alimony in the following priority:

"(1) Unless the court expressly finds that rehabilitative alimony is not feasible, the court shall award rehabilitative alimony to the party for a limited duration, not to exceed five years, absent extraordinary circumstances, of an amount to enable the party to acquire the ability to preserve, to the extent possible, the economic status quo of the parties as it existed during the marriage.

"(2) In cases in which the court expressly finds that rehabilitation is not feasible, a good-faith attempt at rehabilitation fails, or good-faith rehabilitation only enables the party to partially acquire the ability to preserve, to the extent possible, the economic status quo of the parties as it existed during the marriage, the court shall award the party periodic installments of alimony for a duration and an amount to allow the party to preserve, to the extent possible, the economic status quo of the parties as it existed during the marriage as provided in subsection (g)."

In this case, the trial court wrote the following regarding the award

of alimony and support:

"After considering the length of the parties' marriage, the age and health of each party, the earning history of each party, as well as the ability of each party to be self-supporting, and the standard of living during the marriage, this Court hereby finds that rehabilitation of the Wife is feasible given her work history as a nurse and ability to renew her license.

15

As such, an award of rehabilitative alimony, pursuant to Ala. Code § 30-2-57, is proper. The Wife shall be awarded rehabilitative alimony in the amount of Seven Hundred Fifty and No/100 Dollars ($750.00) per month, beginning January 1, 2025, and concluding with the December 1, 2029, payment."

Thus, in the judgment, the trial court set forth the factors it relied on in concluding that the wife was entitled to receive rehabilitative alimony. Additionally, some of the requirements set forth in § 30-2-57(a) appear to be implied in the trial court's award of rehabilitative alimony to the wife. For example, the trial court appears to have found implicitly that, although the wife can eventually become self-supporting, she will not be able to support herself until she renews her nursing license. However, "the legislature has clearly directed that a trial court must make express findings as to the establishment of the basis for an alimony award and as to the specific type of alimony that is awarded." Lopez v. Rodriguez, 379 So. 3d 455, 462 (Ala. Civ. App. 2023) (emphasis added).

Here, in awarding the wife rehabilitative alimony, the trial court did not include express findings regarding whether the wife had a separate estate that was sufficient "to enable [her] to acquire the ability to preserve, to the extent possible, the economic status quo of the parties as it existed during the marriage" or whether the husband had "the

16

ability to supply those means without undue economic hardship." § 30-2-57(a)(1) and (2). In fact, the judgment is silent as to whether the husband had the financial means to pay the wife rehabilitative or periodic alimony. As a result, "'[w]e cannot properly review the award in this case without having before us the express findings required by § 30-2-57.'" Lopez, 379 So. 3d at 462 (quoting Merrick v. Merrick, 352 So. 3d 770, 775 (Ala. Civ. App. 2021)). Therefore, we must reverse the judgment insofar as it awards alimony and remand the case to the trial court with instructions that it enter a new judgment in compliance with the requirements of § 30-2-57.

The wife also contends that the trial court inequitably divided the parties' marital assets. It is well settled that "[t]he issues of property division and alimony are interrelated, and they must be considered together on appeal." Turnbo v. Turnbo, 938 So. 2d 425, 430 (Ala. Civ. App. 2006). Because we have directed the trial court to reconsider the issue of alimony, we pretermit any discussion regarding division of marital property and direct the trial court on remand to reconsider the award of marital assets in conjunction with its alimony determination. See Lopez, 379 So. 3d at 462.

As to issues involving the children, the wife contends that the evidence neither supports the trial court's decision to award the husband sole physical custody of the two younger children nor, she says, supports the visitation award that she received. In the judgment, the trial court observed that the oldest child was no longer a minor and that the custody provisions did not apply to him. It then explained that, based on the evidence presented, it believed that it was in the best interests of the younger children for the husband and the wife to share joint legal custody and for the husband to have sole physical custody. In its judgment, the trial court recognized the difficulty in establishing a visitation schedule between E.H., the parties' sixteen-year-old daughter, and the wife, because of E.H.'s age and her strained relationship with the wife. It directed the husband and the wife to make reasonable efforts to encourage E.H. to have a positive relationship with the wife and to have regular visits with her.

As to H.H., the parties' twelve-year-old daughter, the trial court directed that the wife should have reasonable and liberal parenting time with her, including on weekends and holidays, but, in the event that the

parties were unable to agree on such visitation, it established a standard visitation schedule for the wife and H.H.

Matters of child custody rest within the discretion of the trial court. Thompson v. Thompson, 624 So. 2d 636, 637 (Ala. Civ. App. 1993). The decision of the trial court regarding child custody based on the factual findings made after it hears ore tenus testimony will be affirmed unless that determination is unsupported by the evidence and is plainly and palpably wrong. Id. That same broad discretion is afforded to a trial court when it determines the visitation rights of a noncustodial parent. Jackson v. Jackson, 999 So. 2d 488, 493 (Ala. Civ. App. 2007). "In exercising its discretion in awarding visitation rights, the trial court's primary consideration must be the best interests and welfare of the children, and each case must be decided on its own facts." Mann v. Mann, 725 So. 2d 989, 992 (Ala. Civ. App. 1998).

In making an initial custody determination, the trial court considers the best interests of the children, and neither the husband nor the wife is entitled to a presumption in his or her favor as to the award of custody. Gurganus v. Clay, 372 So. 3d 1222, 1230 (Ala. Civ. App. 2022). Among the factors the trial court should consider when determining a

custody award are the character, stability, mental and physical health of the parents and the interpersonal relationship between each child and each parent. Id.

Based on the evidence, the trial court reasonably could have believed that the wife did not enjoy the physical and mental health to have sole physical custody or even joint physical custody of the minor children. Perhaps as important, the evidence indicated that the two minor children had a strained relationship with the wife. The husband testified that all three children had, at one time, mentioned suicide because of the way the wife made them feel, and E.H. testified that she was not ready to work on the relationship she had with the wife. Thus, the evidence supports the trial court's determination that it was in the children's best interests to award the husband sole physical custody of the children. Id.

Concerning the visitation the trial court awarded to the mother, we note that, ordinarily, a noncustodial parent has reasonable rights of visitation with his or her children. B.F.G. v. C.N.L., 204 So. 3d 399, 404 (Ala. Civ. App. 2016). However, in Ex parte Thompson, 51 So. 3d 265, 272 (Ala. 2010), our supreme court wrote that, "in establishing visitation

privileges for a noncustodial parent[, the trial court] must consider the best interests and welfare of the minor child and, where appropriate, … set conditions on visitation that protect the child." Visitation rights "may be restricted in order to protect children from conduct, conditions, or circumstances surrounding their noncustodial parent that endanger the children's health, safety, or well-being." B.F.G., 204 So. 3d at 404.

Given the wife's physical and mental situation, the toxic relationship she has with the children, and E.H.'s advanced age, we conclude that the evidence supports the trial court's determination that, although visitation between E.H. and the wife is to be encouraged, forced visitation pursuant to a set schedule is not feasible under the circumstances. Id. However, in the case of H.H., the trial court's award of at least standard visitation to the wife recognizes the condition of their relationship but offers the two of them time to try to repair that relationship. See, e.g., Mitchell v. Mitchell, 335 So. 3d 1173, 1178-79 (Ala. Civ. App. 2021). The wife has failed to demonstrate that the trial court's award of custody and visitation was plainly and palpably wrong; therefore, there is no basis for reversal as to this issue. Mann, 725 So. 2d at 992.

The wife also contends that the trial court erred in calculating her monthly child-support obligation to be $413.50 because, she says, it failed to consider all of the husband's income. She also argues that, because the record does not contain a standardized child-support-guideline form, also known as a Form CS-42, see Rule 32, Ala. R. Jud. Admin., there is no way to determine whether the trial court properly applied the child-support guidelines in its calculation. We agree.

Rule 32(E) requires that

> "[a] standardized Child-Support Guidelines form (Form CS-42 or Form CS-42-S as appended to this rule), a Child-Support-Obligation Income Statement/Affidavit form (Form CS-41 as appended to this rule), and a Child-Support Guidelines Notice of Compliance form (Form CS-43 as appended to this rule) shall be filed in each action to establish or modify child-support obligations and shall be of record and shall be deemed to be incorporated by reference in the court's child-support order."

In L.A.R. v. J.B.R., 401 So. 3d 1171, 1184-85 (Ala. Civ. App. 2024), this court held that compliance with Rule 32(E) is mandatory and that failure to comply with that rule can be a basis for reversing a child-support judgment if this court is unable to determine from the evidence the manner in which the trial court calculated the child-support award. Using the figures the parties included in their respective income

22

affidavits, that is, that the husband has a gross monthly income of $13,650 and the wife has a gross monthly income of $1,586, we calculated that the wife's monthly child-support obligation for the two minor children would be approximately $230 -- nearly half of the amount the trial court ordered her to pay.

Furthermore, the husband testified that he received financial benefits in addition to the income that he reported in his income affidavit. Rule 32(B)(2)(a) includes in its definition of "gross income"

> "income from any source, and includes, but is not limited to, salaries, wages, commissions, bonuses, dividends, severance pay, pensions, interest, trust income, annuities, capital gains, Social Security benefits, veteran's benefits, workers' compensation benefits, unemployment-insurance benefits, disability-insurance benefits, gifts, prizes, and preexisting periodic alimony."

The rule also defines income as "in-kind payments received by a parent in the course of employment, self-employment, or operation of a business" if those payments "are significant and reduce personal-living expenses." Rule 32(B)(4). Under those definitions, the amount the husband received each month from employers to pay for personal expenses charged on a credit card, country-club dues, and health-insurance coverage can be

considered income. When those financial benefits to the husband are considered, the wife's child-support obligation decreases further.

In sum, based on the information contained in the record, we cannot discern how the trial court determined the wife's child-support obligation to be $413.50 per month. Therefore, that portion of the judgment establishing the amount of the wife's child-support obligation is reversed, and the cause is remanded for the trial court to recalculate the wife's monthly child-support obligation in compliance with Rule 32 and supplement the record with a Form C-42 so that, if called upon to do so, this court can determine the basis for the amount of the child-support award.

Finally, the wife argues that the trial court erred in refusing to order the husband to pay her attorney's fee. A trial court is granted broad discretion regarding whether to award an attorney fee in domestic-relations cases. See Turney v. Turney, 381 So. 3d 429, 443 (Ala. Civ. App. 2022). When deciding whether to award an attorney fee in a divorce action, the trial court should consider "the financial circumstances of the parties, the parties' conduct, the results of the litigation, and, where appropriate, the trial court's knowledge and experience as to the value of

24

the services performed by the attorney." <u>Figures v. Figures</u>, 624 So. 2d 188, 191 (Ala. Civ. App. 1993). "This court will not reverse the trial court's discretionary decisions unless we are convinced that it '"'committed a clear or palpable error, without the correction of which manifest injustice will be done.'"'" <u>Turney</u>, 381 So. 3d at 443 (citations omitted). Because we are reversing the judgment, in part, and the trial court has issues it still must consider, we pretermit resolving this issue at this stage of the proceedings.

<u>Conclusion</u>

That portion of the judgment concluding that the parties did not reconcile during the pendency of this action and that, therefore, the trial court had jurisdiction over the action is affirmed, as is the trial court's award of child custody and visitation. However, those portions of the judgment involving the award of rehabilitative alimony, the division of marital property, and the award of child support are reversed, and the case is remanded to the trial court for it to enter a judgment consistent with this opinion.

AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.

Moore, P.J., and Edwards, Hanson, and Bowden, JJ., concur.